RANGER REALTY COMPANY, a corporation, ERNEST G. DIEHL and GEORGE P. DIEHL, as co-partners trading and doing business under the firm name and style of Diehl Brothers and Company, and CITY OF FORT LAUDERDALE, a municipal corporation, *Appellants,* v. L. C. MILLER, as a taxpayer of the City of Fort Lauderdale, a municipal corporation, on his own behalf and on behalf of all taxpayers of said municipality similarly situated, *Appellees.*

136 So. 546.

En Banc.

Opinion filed July 7, 1931.
Petition for rehearing denied August 10, 1931

380

*H. H. Taylor,* of Miami, and *Hall & English,* of Fort Lauderdale, for Appellants;

*McCune, Hiaasen & Fleming,* of Fort Lauderdale, for Appellee.

DAVIS, J.—The City of Fort Lauderdale is a municipal corporation organized and existing under Chapter 10552, Laws of Florida, Acts of 1925, Special Session Laws 1925, Vol. 2, page 1579, and Chapter 11484, Laws of Florida, Acts of 1925, Extra-ordinary Session, page 828.

A taxpayer's suit filed in the court below by the appellee questioned the validity of a contract entered into with Diehl Brothers and Company, whereby the City of Fort Lauderdale sold certain of its outstanding unredeemed tax certificates for seventy-five per cent of the principal face value thereof. The certificates sold were for the years 1923, 1924, 1925 and 1926. The contract in question was dated August 21st, 1929. The sum of $33,333.00 represents the amount of the original tax assessment covered by the certificates sold, for which the purchaser paid a consideration of $25,000.00 in cash. Additional certificates were involved. These the City agreed to sell to the same purchasers for 75% of the par value thereof, such payment to be made when the same were collected.

Appellee, as complainant in the suit, prayed for an injunction, for cancellation of the agreement, for attorney's fees for his solicitors and forfeiture to the city of all amounts that had been paid on the contract. Application for temporary injunction was made and heard. While a ruling on same was reserved by the Chancellor, who took the case under advisement, a settlement was arranged for between the City of Fort Lauderdale and the tax certificate

purchasers. By supplemental bill filed February 26th, 1930, this compromise or settlement was attacked as *ultra vires* and void. The supplemental bill prayed that an accounting be had touching the matters in the original bill and supplemental bill and that a money judgment be entered in favor of the city against the Ranger Realty Company and Diehl Brothers Company for $18,271.43 with interest. This money judgment was sought for the recovery to the city of that sum which had been refunded by the city authorities to Diehl Brothers and Company under the terms of the settlement made *pendente lite*.

The supplemental bill was held good as against general and special demurrers and the defendants appealed. The conclusion we have reached after hearing and considering the able arguments made, and the exhaustive briefs filed, by counsel for the respective parties makes it unnecessary for us to discuss any proposition other than that which goes to the equity of the original and supplemental bills.

A supplemental bill is considered merely as an addition to the original bill, and while it is often permissible and proper to introduce matter that has occurred after the institution of the suit, and of such a nature as can not be properly the subject of an amendment, yet such new matter must not be such as to change the rights and interests of the parties before the Court. Ledwith vs. Jacksonville, 32 Fla. 1, 13 Sou. 454. A complainant who had no cause of action at the time of filing his original bill cannot maintain a supplement bill because of anything which occurred after the filing of the original bill. Neubert vs. Massman Bros. & Company, 37 Fla. 91, 19 Sou. 625. So if the original bill of complaint was without equity, the demurrer to the supplemental bill should have been sustained and both bills of complaint dismissed, if amendable to state a sufficient equitable ground for the relief sought.

The Constitution provides that the Legislature shall authorize the incorporated cities and towns in the state to

assess and impose taxes for municipal purposes. Section 5, Art. IX. Property taxed by cities and towns under legislative authority is required to be taxed upon the *principles* established for State taxation. By "principles established for state taxation" is meant uniformity and equality, just valuation and similarity of treatment of the *subjects* of taxation by both jurisdictions. In this respect the applicable procedure by which the tax is enforced is not regarded as one of the "principles" established for state taxation, and accordingly the methods of enforcing taxes due a municipality may be, and ofttimes is, different from that provided by law for the enforcement of taxes due the state and county. That such differences in procedure for *enforcement* of the tax are valid when the tax to be enforced is valid is beyond question, where due process of law is afforded and equal protection of the laws not denied by the procedure adopted for the purpose intended to be accomplished. In this connection, the application of the procedure or remedy through which the tax is collected, is not regarded as a part of the power of taxation within the meaning of the principles that the power of taxation cannot be delegated because it is an attribute of sovereignty. Gautier vs. Ditmar, 97 N. E. 464, 204 N. Y. 20.

In the case at bar, the period of redemption allowed the taxpayer to redeem the tax certificates issued to the city of Fort Lauderdale had expired with reference to the certificates particularly involved in the suit. Whether or not the title to the land itself had actually vested in the city by virtue of the expiration of the period allowed for redemption is immaterial since the taxpayers whose lands were covered by these certificates had been given uniform and equal treatment with all other taxpayers in that their property had been sold for delinquent taxes under exactly the same conditions, at the same time and subject to the same penalties and privileges of redemption within two years as that of all the other taxpayers of the city. That

was a sufficient compliance with the constitutional require-
ment that all property taxed by cities and towns shall be
taxed on the same principles as established for state taxa-
tion. It was likewise not a violation of the organic principle
that requires a uniform and equal rate of taxation and as-
sessment.

Thus the case at bar is clearly distinguishable from that
of Hoadley v. City of Tarpon Springs, 99 Fla. 130, 125 So.
912. The case there considered presented the question of
the validity of an *Act* of the Legislature which on its face
plainly contemplated a disregard of the requirement. of
uniformity and equal rate of taxation and assessment by
permitting the City of Tarpon Springs to sell its tax certifi-
cates *en masse* at a discount long before the uniform and
equal period of redemption guaranteed to the taxpayer had
expired and under circumstances which would have per-
mitted the taxpayer himself to have purchased the outstand-
ing tax certificate on his own land at a discount.

That case applied the generally recognized principle of
the law of taxation that a statute authorizing the accept-
ance, directly or indirectly, of a part of a tax for the whole
is unconstitutional as a denial of the equal protection of the
laws and as a disregard of the requirement of equality and
uniformity of treatment of all taxpayers, where it may be
applied as a favoritism extended to the property owner, or
some one acting for him, and not as a permission to the
local officers to accept less than the full amount due *only
because actual test has demonstrated that no more can be
obtained.* Lincoln Mortgage & Trust Co. vs. Davis, 92 Pac.
707, 76 Kan. 639.

Where all taxable property and all taxpayers are re-
quired by a statute to be treated alike and all taxpayers
are in actual practice treated alike until the statutory
rights of all the taxpayers have been extinquished which
extinguishing of rights has occurred only by operation of
those provisions of law which are brought into play solely

because of the taxpayers' own default, it cannot be said that provisions of statutes, or actions of officials taken pursuant to such statutes, looking to the collection of as much as possible of the amounts due by the taxpayers are unconstitutional and shall be forever prohibited merely because the officials cannot collect all.

On the contrary, uniformity of assessment and equality of treatment in taxation means no more than that the taxing officials shall endeavor by all legal and ordinary means within their lawful powers to collect the amounts due in full, according to the procedure provided for that purpose. Having exhausted such means, it by no means follows that such officials are forbidden by constitutional restrictions from the collection of any amount whatsoever simply because they cannot collect all.

Such a construction of constitutional principles would inevitably work a hardship upon those taxpayers who pay their taxes. Constitutional protection as to uniformity would effectually be denied by thus in substance rendering the delinquent tax unenforceable at all, because not possible to be made enforceable in full.

Such a rule as contended for if applied to foreclosure of mortgages by prohibiting confirmation of a foreclosure sale until the mortgaged property should bring the full amount of the mortgage debt and costs would in effect destroy the value of most mortgages and thereby in effect nullify the contractual obligation embraced in such mortgages.

In a similar way, to deny the right of taxing authorities to sell tax certificates or tax properties below the full amount of the tax and penalties, after such authorities have exhausted the usual and ordinary methods of obtaining the tax money in full, is to deny the enforcement of the tax laws against those particular taxpayers whose property is so favorably circumstanced that it will not at forced sale bring the full amount of the accumulated tax and penalties. To that extent such a ruling would produce the same

unconstitutional result with regard to taxes that we have just pointed out with regard to a similar law if applied to sales of property occurring in the foreclosure of mortgages.

By its charter the City of Fort Lauderdale was given the power to make assessments, levy taxes and enforce the same when levied. Such power, directly given as it is, carries with it the power necessarily implied from the direct power given to enforce the collection of the taxes levied. The power is directly given to apply for and obtain a tax deed to the property covered by tax certificates acquired by the City. See Section 1019 C. G. L., 793 R. G. S.

But under Section 897 C. G. L., 697 R. G. S., paragraph ''Second,'' property acquired and held by a municipal corporation under a city tax deed, would be subject to payment of state and county taxes, thereby casting the burden on the remaining taxpayers of the city not only to pay the usual and ordinary taxes which would customarily be assessed against them for municipal purpose, but an additional amount to enable the municipality to carry lands so acquired by it under city tax deeds.

The power given the city of Fort Lauderdale to make tax assessments *and enforce the collection* of taxes must therefore necessarily include the right to adopt such means as will make the exercise of such power effective for the purpose for which it is given. Obtaining tax deeds on certificates acquired and held by the city is not the only method allowed to be pursued.

Powers legally conferred by *express* provisions of law, and such as are by fair implication and intendment properly incident to or included in the powers expressly conferred, may be exercised for the purpose of carrying out and accomplishing the object of any municipality in this State. Liberis v. Harper, 89 Fla. 477, 104 So. 853.

The general power of municipal taxation given the City of Fort Lauderdale must consequently be construed as en-

titling it by any reasonably appropriate means to realize the *results* of the proper exercise of that power.

This includes the right to sell and assign tax certificates acquired and held by the City so as to enable the City to raise money by that means for its legitimate purposes.

Primarily, the only duty of the City is to hold its certificates subject to redemption, during the period allowed by law for redemption. It is neither permitted nor required to sell them during such period at any price less than the full amount of taxes and penalties represented thereby. During this period of redemption allowed and secured to the taxpayers, uniformity of taxation demands that any amount which the taxpayer may be required to pay during that time to redeem shall inure in full to the benefit of the municipality to which it is due.

This is a part of the process of taxation itself, and, as was held in the Hoadley case, *supra,* cannot be defeated by authorizing the assignment of the certificate to a stranger who will reap the benefit of any difference that may be paid between what the taxpayer is required to submit to for redemption, and what the city may actually receive by virtue of its exercise of the taxing power through tax sales and issuance of tax sale certificates.

So long as the sale of municipal tax sale certificates is for the best price obtainable, and is attempted only after the right of redemption given by law to the taxpayer has expired, and so long as the sale of the certificates is not shown to be intended to be made to the delinquent taxpayer himself so as to amount to an unconstitutional favoritism extended to such delinquent property owner at the expense of other taxpayers (Lincoln Mortgage & Trust Co. v. Davis, *supra*) a municipal corporation which has been given the general power to make and enforce municipal tax levies has the incidental power to sell and assign its past due tax certificates and to accept in consideration thereof less than the full amount of taxes and penalties due,

when experiment has reasonably demonstrated to the officials of the city that the full face amount thereof, with or without the attached penalties, cannot be obtained by the ordinary proĉesses.

The presumption is that the governing official of a municipality have proceeded for the best interests of the public in making a sale or contract for sale of tax certificates such as is involved here. While such presumption is, of course, rebuttable, the burden is upon a complaining taxpayer to show that the officials are not acting in good faith, or that if in actual good faith the transaction will not be for the best interests of the public because of its inherently injurious resultant effect which should have been ascertained and guarded against by such officials. In the absence of such allegations and in the failure of proof of them, a taxpayer attains no standing in a court of equity to complain.

There is no sufficient showing in either the original or supplemental bill of complaint which points out gross inadequacy of consideration, fraud, neglect, abuse of power or disregard of public welfare of such character as to warrant the relief prayed for, and the demurrers should have been sustained to both bills and the same dismissed.

Accordingly the decree appealed from is reversed, and the cause remanded with directions to sustain the demurrers and dismiss the original and supplemental bills of complaint, without prejudice, however, to the right to file such an amended complaint as may be authorized by order of the Court below in order that further proceedings may be had in conformity to this opinion.

It is so ordered.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL AND BROWN, J.J., concur.