STATE, *ex rel.*, HESTER DOWLING v. ELLIOT W. BUTTS,
Clerk of Circuit Court
(No. 1)

STATE *ex rel.*, H. F. SMITH, v. ELLIOT W. BUTTS,
Clerk Circuit Court
(No. 2)

GUY M. RAGAN v. JOHN R. PEACOCK, Clerk Circuit Court.
(No. 3)

149 So. 746.

F. P. Fleming, L'Engle & Shands, John F. Burkett, Harrison Barringer and Giles J. Patterson, for Relator;

Crawford & May and Cary D. Landis, Attorney General, and Robert J. Pleus and H. E. Carter, Assistants, for the State;

T. G. Futch, W. H. Poe, and Kay, Adams, Ragland & Kurz, Sutton, Tillman & Reeves, as Amicus Curiae.

## STATEMENT.

In the case first above stated, the alternative writ issued by this Court alleges that the relators are citizens and residents of ·Duval County, Florida; that on August· 4, 1930, the 'tax collector for Duval County issued to the State of Florida tax certificate No. 10965 for the delinquent taxes of the year 1929 upon described real estate; that on the 18th day of June, 1933, Hester Dowling requested respondent, Clerk of the Circuit Court, for Duval County, Florida, to sell, assign and transfer to her the said tax certificate No. ·10965, which certificate was then, and still is, in the custody and possession of the respondent, subject to sale or re-·demption; but respondent, alleging that he was prohibited by an Act of the Legislature, approved June 2, 1933, now Chapter 16252, Acts of 1933, Laws of Florida, from selling, assigning or transferring said certificate or any certificate to said relator or anyone else during the period described by said Act, declines and refuses for the reasons

aforesaid and for no other reason, to sell, transfer or assign said Certificate No. 10965 to relator; that relator charges that said Act is unconstitutional, null and void, in that it violates Section 16, Article 3; Section 1, Article 9; Section 8, Article 12; Section 9, Article 12; Section 17, Article 12; Section 5, Article 9; Section 10, Article 9 of the Constitution of Florida, and violates the provisions of the Constitution of the United States guaranteeing the equal protection of the laws.

The command of the alternative writ is that the respondent do sell, assign and transfer to relator said tax certificate No. 10965 upon the payment of the amount of money required by law to be paid for the purchase of said tax certificate, or to show cause for not doing so.

By the return the respondent in effect admits the allegations of fact contained in the alternative writ but denies that said Chapter 16252, Acts of 1933, is unconstitutional, null and void, and says that even if certain other sections thereof may be of questionable validity, only Section 1 of such Act is involved in this proceeding and that Section 1 can readily be severed from the remainder of said Act and given full effect and operation.

The relator moved for a peremptory writ notwithstanding the return, upon the ground that the return states no cause or reason why said peremptory writ should not issue.

In the second case above cited, the alternative writ issued by this Court alleges that the relator is the owner of described real estate located in Duval County, Florida, which property is subject to taxation by said County and by the State of Florida; that all taxes levied and imposed against the said property by the said county and State in the year 1932 and prior years have been paid; and in effect alleges that the relator at some time prior to October 1, 1932, was

employed as a teacher in one of the free public schools of Duval County by the Board of Public Instruction of such county, and that for such services rendered pursuant to said contract of employment by the relator, said Board was indebted to relator in the amount of $100.00 and was likewise indebted under similar contracts to divers other persons for salaries as teachers and employees in the said public schools for the years 1932 and 1933 in a large aggregate amount,—being over $67,000.00 for which indebtedness certificates were issued, one of which is held by relator, it being dated June 8th, 1933. It is also alleged that, "at the time of issuing said certificate of indebtedness, a large amount of money has been realized annually from the sale and redemption of tax certificates held in the name of the State of Florida by the Clerk of the Circuit Court in and for Duval County, Florida, to-wit, not less than an average of One Hundred Forty Thousand Dollars ($140,000.00) for each of the ten years last past, and that a large part of the fund so realized from said delinquent taxes was realized through the sale of tax certificates, as distinguished from redemption."

There were other allegations to support a claim or right to require the respondent, clerk of the circuit court, to sell tax-sale certificates from the proceeds of which revenue will be obtained for the payment of relator's certificate of indebtedness.

It is alleged that Chapter 16252 is invalid on grounds similar to those alleged in the other case.

The command of the alternative writ is that respondent shall sell, transfer and assign to Hester B. Dowling tax certificate No. 10965, and to sell, transfer and assign to any other applicant therefor, any and all tax certificates for taxes levied by the State of Folrida in the County of Duval,

upon the payment of the amounts required by law to be paid for the purchase of tax certificates, or to show cause for not doing so.

The respondent moved to quash the alternative writ.

In the third case above stated a citizen tax payer, on behalf of himself and all other citizens similarly situated, sought to have the clerk of the circuit court enjoined from accepting any kind of county, district or school bonds, or matured interest coupons therefrom, in lieu of money in redemption of delinquent tax-sale certificates as provided by Chapter 16252, Acts of 1933, known as Senate Bill No. 597 or as the "Futch Bill." The bill of complaint contains the following:

"*Fourth:* That there are many persons ready to pay taxes with bonds under the provisions of said law, and the Clerk of said Court, Defendant herein, will accept such bonds in lieu of money under the provisions of said Act, and will cancel the tax certificates affecting the property covered by the taxes of such persons in accord with the provisions of said law, unless restrained by this Honorable Court."

"*Fifth:* That if said Defendant accepts bonds or matured interest coupons as provided in said law in lieu of money from the many persons who are ready to pay their taxes in bonds as allowed under said law, Plaintiff as a tax payer will be specially injured by reason of the increased public burden which will result therefrom, in that the taxes of said County assessed for the various tax years of 1931 and preceding years has provided funds only for the various county purposes, and to be paid in money, and if portions thereof are allowed to be paid in bonds, an insufficient amount of money for County purposes will result, thereby necessitating an increased millage of tax assess-

ment for the fiscal year 1933-1934 upon all property within the County, including that of Plaintiff."

As in the other two cases it is alleged that such enactment violates designated provisions and principles of organic law. The Court denied the injunction and dismissed the bill. Complainant appealed.

Futch Bill

CHAPTER 16252, ACTS OF 1925

(Senate Bill No. 597)

"*An Act* to provide for the Settlement of Delinquent Taxes on Real Estate in the State of Florida, and to Further Defer the Enforcement of Liens for such Delinquent Taxes, and for the Assessment of Lands Upon or Against which Taxes are Delinquent and for the Redemption of Delinquent Tax Certificates with Bonds.

"*Be It Enacted by the Legislature of the State of Florida:*

"*Section* 1.   All tax certificates and liens for delinquent taxes against real estate in the State of Florida held by the State of Florida for taxes against any such real estate for the year 1931 and all previous years, whether suits for the enforcement thereof are now pending or not, shall be held by the State of Florida without sale or enforcement for and during the period of time beginning with the date upon which this Act shall become effective, and ending with the first day of July, 1938, and during such period no such tax certificate or lien for delinquent taxes held or owned by the State of Florida shall be sold or transferred to any person or persons whomsoever than the actual *bona fide* owner of the fee title to such real estate.   Provided that nothing herein contained should in any wise repeal or abrogate the requirements of House Bill No. 303 passed at this Session.

"*Section 2.* During the period of time mentioned, described and set out in Section 1 of this Act, the actual *bona fide* owner or owners to the fee title to any real estate upon or against which the State of Florida holds any tax certificate or lien for unpaid taxes, shall be allowed to pay off and discharge, at any time, any one or more of such lien or liens without regard to the number of years of unpaid taxes existing against such land at the time of such payment, upon payment of the amount due for taxes and costs and charges, together with interest from the first day of April in the year following that for which such taxes were assessed, at the rate of five per cent (5%) per annum, and the fees of the Clerk of the Circuit Court incident to such payment; and where any such certificate is held by a person, firm or corporation other than the State of Florida, such *bona fide* owner or owners of the fee title shall be allowed to redeem such certificate, as now provided by Law, without, however, being required to pay any lien or claim for taxes for any year or years subsequent to the year for which such certificate shall have been issued.

"*Section 3.* All lands against which the State of Florida holds any tax certificate or lien for delinquent taxes, shall be assessed for taxes for the year 1933 and all subsequent years in like manner and to the same effect as if no taxes against such lands were delinquent, and the *bona fide* owner or owners of any such land shall be permitted to pay the taxes on any such land for any current year beginning with the year 1932, and any subsequent year for which the same may be assessed hereunder, in like manner as if no delinquent and unpaid taxes existed against any such lands.

"*Section 4.* The provisions contained in Section 1 of this Act shall on July 1, 1937, be extended for an additional period of fifteen (15) years as to all land upon which the

taxes assessed for the years 1932, 1933, 1934, 1935 and 1936 shall have been paid in full prior to said July 1, 1937.

"*Section* 5. Delinquent taxes on any land included under the provisions of this Act, for the year 1932 and subsequent years, shall be sold in like manner and shall carry the same penalty, interest and charges as are provided by the laws of the State of Florida relating in general to the sale of land for unpaid taxes.

"*Section* 6. That bonds or matured interest coupons of all counties or other taxing districts shall be receivable at par and in lieu of money in redemption of tax sale certificates or other evidences of tax liens held in the name of the State, covering lands sold for non-payment of State and County or other taxing district taxes to the amount of the delinquent taxes which were levied in each county or other taxing district for all purposes other than the levy made for State taxes.

"*Section* 7. That any person entitled to and desiring to redeem lands from tax sales certificates or other evidence of tax liens under the provisions of this Act, shall pay in cash to the Clerk of the Circuit Court of the county in which such lands lie the amount required to redeem the lands from that portion of the tax sales certificate and subsequent unpaid taxes representing taxes levied for State purposes, and to deliver to such Clerk bonds or matured interest coupons of such county or other taxing district in an amount equal to that portion of the tax sales certificate and subsequent unpaid taxes which represent all taxes levied for county or district purposes. Such bonds or matured interest coupons and moneys shall be received by the Clerk who shall issue and deliver to the person redeeming such lands his receipt therefor and cancel the tax certificate or other evidence of the tax lien in the manner provided

by law. The bonds or matured interest coupons received in redemption of such lands shall be held by the Clerk of the Circuit Court uncancelled, and proper account shall be kept thereof for adjustments of accounts between the county and such other taxing units or districts as may be interested, at such time or times as the Board of County Commissioners may direct.

"*Section* 8. All laws and parts of laws in conflict herewith are hereby repealed in so far as the same may be necessary for a liberal interpretation of this Act.

"*Section* 8-a. If any Section, paragraph, clause or sentence of this bill is held to be unconstitutional, such holding shall not affect the remaining portions of the Act.

"*Section* 9. This Act shall take effect immediately upon becoming a law.

"Approved June 2, 1933."

The statutes of the State provide that if the taxes upon any real estate shall not be paid within the time prescribed, the tax collector shall advertise and sell the land. Section 969 (756) C. G. L., Section 3 Chapter 14572 Acts of 1929. "In case there are no bidders the whole tract shall be bid off by the tax collector for the State." Section 972 (759) C. G. L., Section 5 Chapter 14572 Acts of 1929. At the sale the tax collector shall give to the purchaser a certificate of such sale describing the lands purchased and the amount paid therefor. The statutory form of the certificate contains a statement that the tax collector pursuant to notice given as required by law did sell to the purchaser for the amount due and unpaid for taxes, costs and charges on the described land for the year stated, and that the purchaser "or his assign, will therefore be entitled to a deed of conveyance of such lands in accordance with the law, unless the same shall be redeemed by payment of such

amount and within such periods of time as are provided by law.  Section 8, Chapter 14572, Acts of 1929.

"All tax certificates heretofore or hereafter issued, whether to the State or individuals, shall be transferable by endorsement at any time before they are redeemed, or a tax deed is executed therefor."  Sec. 982 (767) C. G. L.

"All tax sale certificates now owned by or hereafter issued to the State, shall be held by the clerks of the circuit courts of the several counties wherein are situated the lands covered by such certificates for redemption or sale, as hereinafter provided, and all redemptions of lands heretofore or hereafter certified, or sold for taxes, whether certified or sold to the State, or sold to individuals, shall be made through the clerks of the circuit courts of the respective counties wherein such lands are situated."  Sec. 983 (768) C. G. L.

"The tax assessors in making up their assessment rolls, shall place thereon the lands certified to them by the State Comptroller as having been sold to the State for taxes, and shall enter their valuations of the same on the rolls, and shall mark against such lands on their said rolls, the word State tax certificate.  The amount of taxes on said lands shall not be extended on the roll, but when said lands are redeemed from the tax certificate or certificates under which they are sold, the person redeeming shall also pay the taxes for the years in which the said lands are marked as aforesaid, at the rate of taxation levied thereon in those years respectively, together with interest as now provided by law."  Sec. 984 (769) C. G. L.

"Any person, or agent of any person, owning or claiming such lands sold for taxes, or any part or parcel thereof, or any interest therein, or the creditor of any such owner or claimant, may redeem the same at any time after such sale

and before a tax deed is issued therefor, by paying to the clerk of the circuit court of the county wherein such land is situated the" amounts required by law. Sec. 985 (770) C. G. L., Sec. 9, Chap. 14572, Acts 1929.

"The holder of any tax certificate at any time two years after the date of its issuance may obtain a tax deed to the land therein described by application to the clerk of the circuit court of the county wherein such land is situated as provided by law." Sec. 2, Chap. 14572, Acts of 1929, amending Sec. 1003 (769) C. G. L. See also Sec. 10, Chap. 14572, Acts 1929.

WHITFIELD, J.—In the three cases here considered together the constitutional validity of a legislative enactment known as the "Futch Bill," Senate Bill No. 597, Chapter 16252, Acts of 1933, copied in the statement filed herewith, is challenged as it affects the rights of an applicant to purchase a tax sale certificate, of a holder of a certificate of indebtedness issued by a county board of public instruction and of a citizen taxpayer. See 3rd head note, State *ex rel.* Dofnos Corp. v. Lehman, 100 Fla. 1401; 131 Sou. Rep. 333, for the authority of a tax payer to maintain such a proceeding. The general purpose of the Act is to provide further extension privileges and inducements to owners for the redemption of tax sale certificates held by the State for unpaid State, county and district taxes upon real estate for the year 1931 and prior years, after the two-year period of redemption has expired; and as a consideration or compensation for such additional redemption privileges and inducements, to require the assessment of such lands for current and future taxation, they being under the law not now assessed because they have been sold to the State for unpaid taxes and the tax sale certificates are still held by the State. Section 984 (769) Compiled General Laws.

The object of this Act is to utilize the otherwise unredeemed tax sale certificates held by the State for unpaid State, county and district taxes for the year 1931 and prior years, after the two-year period of redemption has expired, for the benefit of the taxing units having rights in unpaid taxes included in the tax sale certificates, and that lands not now being assessed for State, county and district taxation because they have been sold to the State and not redeemed, may be now and hereafter assessed to share the burdens of taxation.

Pursuant to the organic requirements for an equal and uniform system of ad valorem taxation and for due process and equal protection of the laws, statutes of the State, some of which are referred to in the statement, provide for equal and uniform rates of ad valorem taxation in the various taxing units based upon just valuations of all property that is subject to ad valorem taxation in the taxing units respectively. Such system of taxation includes the sale of lands for the non-payment of State, county and district taxes and for the issue to the State of tax sale certificates showing the amount due for State, county and district taxes on described lands sold to the State at tax sales in the absence of other purposes and provides that the purchaser of land at a tax sale will "be entitled to a deed of conveyance in accordance with the law unless the same shall be redeemed by payment of such amount and within such periods of time as are provided by law." Section 8, Chapter 14572, Acts of 1929, amending Section 981 (766) C. G. L. Tax sale certificates held by the State may be sold at any time for the unpaid taxes, interest and charges or as may be provided by law, upon which certificates tax deeds may issue or foreclosure proceedings may be had as authorized by law, after the expiration of the

two-year period of redemption if the lands are not redeemed. Section 12, Chap. 14572, Acts of 1929, amending Sec. 1003 (779) C. G. L. Where lands are sold to the State for non-payment of taxes and the land is not redeemed or the certificates sold by the State, the title to the land, at the expiration of the time for redemption vests in the State without the issuing of any deed and the certificates shall be evidence of the title of the State. Section 1027 (796) C. G. L. The owners of the land so sold have by statute additional privileges after the expiration of the statutory period of two years, to redeem the land by appropriate payments at any time before tax deeds are issued or before sale under final foreclosure decrees. Sections 12 and 21, Chapter 14572, Acts of 1929.

When the two-year period of redemption expires, the tax sale certificates then held by the State, may by the Legislature be regarded as being of depreciated value and not readily productive of revenue by sale or redemption. It is within the province of the Legislature to provide for such use and disposition of the tax sale certificates held by the State after the two-year period of redemption has expired, as will in its judgment best conserve the interests of the taxing units having rights in the unpaid taxes as shown by the assessments of lands upon which the sales are made and the tax sale certificates are issued.

While the legislative power cannot legally be utilized to violate organic rights that may exist in the disposition of tax sale certificates held by the State, nor as a means of simply favoring delinquent tax payers to the prejudice of others who are not delinquent, yet, the Legislature has power to enact laws making reasonable and appropriate concessions to encourage the redemption of forfeited land from tax sales, thereby acquiring some value for certificates

representing uncollectable or long delinquent taxes, and restoring the lands to the tax roll for current and future assessments, and to regulate the use and disposition of taxable resources and assets for the benefit of interested taxing units. And such legislative power should be considered and given appropriate effect in adjudicating the rights of taxing units and of those who have an interest as owner-taxpayer or as public creditor or otherwise in the making of tax levies and in the disposition of depreciated tax sale certificates which may be nonproductive assets derived through tax assessments for State, county and district ad valorem taxation.

The organic requirements that the Legislature shall provide for a uniform and equal rate of ad valorem taxation upon just valuations of all taxable property and that all property shall be taxed upon the principles established for State taxation, do not forbid the enactment and enforcement of statutes designed to facilitate the adjustment and settlement of delinquent taxes through reasonable additional extensions, reductions and privileges, to encourage or to facilitate the redemption of lands covered by tax sale certificates held by the State *after* the initial redemption period of two years has expired, such privileges of redemption being extended to owners of the property upon condition that current and future taxes on the same land shall be assessed and duly paid; or to make reasonable disposition for some appropriate consideration of tax sale certificates held by the State *after* the initial period of redemption has expired, when such certificates may be regarded by the Legislature as being depreciated in their revenue value and may not be redeemed or sold except at a discount, where such statutes are appropriate to conserve the interests of the taxing units that have rights in the unpaid taxes represented by the tax

sale certificates, and the statutory provisions accord with the principles established by law for State taxation, and are in furtherance of a proper State policy. Such statutes may not violate the organic requirements of uniform and equal ad valorem taxation or the organic principles expressed in the requirements of due process and of equal protection of the laws. See Cooley on Taxation (4th Ed.) Sections 259, 264; Ide v. Finneran, 29 Kan. 569; Lincoln Mortgage & Trust Co. v. Davis, 76 Kan. 639, 92 Pac. Rep. 707; Ridgeway v. Peacock, 100 Fla. 1297, 131 So. 140; Ridgeway v. Reese, 100 Fla. 1304, 131 So. 136; Ranger Realty Co. v. Miller, 102 Fla. 378, 136 So. 546, 61 C. J. 123.

Successive statutory provisions designed to induce the payment of delinquent taxes have been enacted. See Chapter 14572, Acts of 1929; Chapters 15053-4-5-6, 15791, Acts of 1931. Such inducements having failed to secure settlements of delinquent State, county and district taxes and the situation becoming more acute and burdensome to the taxing units of the State, Chapter 16252, Acts of 1933, was enacted to offer greater inducements to tax payers to settle delinquent taxes by extending redemption privileges and by authorizing bonds of counties and districts to be received in payment of county and district taxes in redeeming tax sale certificates held by the State representing unpaid State, county and district taxes for the year 1931 and prior years, to meet the financial exigencies of the taxing units.

It is not made to appear that the statute is not appropriate to serve the revenue needs of the public taxing units or that it is designed to unduly favor particular classes of tax payers to the unfair detriment of other classes of tax payers, or that any administration of the statute in an unconstitutional manner is about to be carried out.

It cannot be fairly said that the title of Senate Bill No. 597, Chapter 16252, Acts of 1933, expresses distinct subjects that are so unrelated as to make the title contain more than one general subject, in violation of Section 16 of Article III of the Constitution; or that the relation of the title to the provisions of the Act renders the title misleading. The several provisions of the body of the Act refer to the general subject of assessment and settlement of State, county and district taxes and matters properly connected therewith; and the clauses in the title taken collectively sufficiently express the single subject matter of the regulations prescribed in the Act.

"A statute must be so construed, if fairly possible, as to avoid, not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *In Re* Seizure of Seven Barrels of Wine, 79 Fla. 2, 83 So. 627.

Sections 1 and 2 of Chapter 16252, Acts of 1933, known as the Futch Bill, provide that all tax certificates for delinquent taxes against real estate held by the State for taxes against such real estate for the year 1931 and all previous years, shall be held by the State without sale or enforcement during the period of time from the effective date of the Act, June 2, 1933, to July 1, 1938, and during such period no such tax certificate held or owned by the State shall be sold or transferred to any one than the actual *bona fide* owner of the fee title to such real estate; and that during such period from June 2, 1933, to July 1, 1938, the actual *bona fide* owner of the fee title to any such real estate, shall be allowed to pay off and discharge at any time, any one or more of such liens without regard to the number of years of unpaid taxes existing against such land, upon payment of the amount due for taxes and costs and charges, with interest at 5 per cent per annum.

In order to so interpret such statutory provisions as to effectuate the legislative intent within applicable organic limitations contained in Articles IX and XII, and other limitations of the Constitution, such provisions should be construed and applied with Sections 3 and 5 of the Act. As a *consideration* or compensation for the privileges of extension and reduction in interest in the redemption of lands from tax sales during the period from June 2, 1933, to July 1, 1938, that are conferred by Sections 1 and 2 to delinquent tax payers, whose lands were sold and are held by the State for taxes for the year 1931 and prior years, Section 5 imposes conditions that the taxes which Section 3 requires to be assessed but which otherwise would not be assessed (Section 984 [769] C. G. L.) upon the same lands for the year 1933 and all subsequent years, shall be paid as they become due; and that if such current and future tax assessments on the lands for the year 1933 and subsequent years are not severally and duly paid, the lands shall, upon default in paying taxes assessed and due for any year during the five years, be sold for such non-payment of taxes in like manner "and shall carry the same penalty, interest and charges as are provided by the laws of the State of Florida relating in general to the sale of land for unpaid taxes," as provided by Section 5 of the Act; which provisions in legal effect terminate the privilege given to owners of land by Sections 1 and 2 of the Act, if current taxes assessed upon the lands for each of the years stated, are not severally paid before sale for non-payment of taxes. Section 5 also requires sales and redemptions for taxes assessed for the year 1932 to be made under the prior general law. Section 1 has reference to tax sale certificates issued to the State upon sales for unpaid taxes for the year 1931 and prior years, where such certificates are still held

by the State and the two-year period of redemption has expired.

Under Section 3 of the Act a *bona fide* owner of land may "pay the taxes on any such land (not redeem a tax sale certificate) for any current year beginning with the year 1932 and any subsequent year for which the same may be assessed hereunder, in like manner as if no delinquent and unpaid taxes existed against any such lands."

The tax sale certificates issued upon the sale of the lands to the State for the unpaid taxes for the year 1931 referred to in Section 1 of the Act do not become subject to the provisions of the Act until the expiration of the two-year period of redemption from the date of the tax sale certificate issued in 1932 or thereafter for unpaid taxes assessed for the year 1931. This is so because during the two-year redemption period all tax sale certificates are subject to sale and redemption under the provisions of law which require and provide for uniformity and equality in taxation. Sales and redemptions of tax sale certificates held by the State during the two-year redemption period, constitute an integral part of the established uniform tax collection procedure of the State. After the expiration of the two-year redemption period statutes may make appropriate provisions for disposing of tax sale certificates held by the State, when organic rights are not thereby violated. After the initial two-year redemption period, tax sale certificates held by the State may, by the Legislature, be presumed to be or may be regarded as being of doubtful or depreciated productive value. It may then be within the province of the State to so dispose of such tax sale certificates as to conserve the mutual interests of the tax payers and of the taxing units having unpaid taxes included in the face amount of the tax certificates. Statutes relating to such disposition may

be effective unless shown to be in their provisions or in their operation, violative of organic provisions. The relator, Smith, alleges that in Duval County not less than $140,000.00 have been collected annually for the sale and redemption of tax sale certificates, but it is not alleged what part if any of such collections for sales and redemptions of tax certificates was made after the initial two-year period of redemption had expired. The Legislature may determine the probable value of unredeemed tax sale certificates it authorizes to be redeemed at reduced rates or with outstanding bonds of the taxing units. Sections 1, 2, 3 and 5 are not shown to violate the organic rights of a tax payer or of a certificate of indebtedness creditor of the county board of public instruction.

Where a statute which forbids the sale or transfer of long delinquent tax sale certificates except to the fee title owner of land, does not violate organic rights of taxpayers of the county, no right of a mere applicant to purchase such a tax sale certificate is violated by the statute, the right of the State to hold or to sell such sale certificates being subject to statutory regulation.

It is not necessary to now determine whether the provisions of Section 4 of Chapter 16252, conditionally extending redemption privileges for fifteen years from July 1, 1937, have the same relation to compensated and permissible redemption privileges, as do the collective Sections 1, 2, 3 and 5 of the Act, so as not to violate organic limitations. Future Legislatures are perhaps not bound by any provisions of the enactment.

In Sections 6 and 7 of Chapter 16252 it is provided that bonds or matured interest coupons of all counties or other taxing districts shall be receivable at par and in lieu of

money in redemption of tax sale certificates held in the name of the State, covering lands sold for non-payment of State and county or other taxing-district taxes, other than the levy made for State purposes; and that any person entitled to and desiring to redeem lands from tax sale certificates under the provisions of this Act, shall pay in cash to the clerk of the circuit court of the county in which such lands lie, the amount required to redeem the lands from that portion of the tax sale certificate and subsequent unpaid taxes representing taxes levied for State purposes, and bonds or matured interest coupons of *such* county or other taxing district in an amount equal to that portion of the tax sale certificate and subsequent unpaid taxes which represent all taxes levied for county or district purposes.

A constitutional interpretation of the provisions of Sections 6 and 7 of Chapter 16252, requires that such provisions be limited to tax sale certificates issued for unpaid taxes assessed for the year 1931 and prior years and held by the State *after* the initial redemption period of two years from the date of the tax sale certificates. The requirements of uniformity and equality of taxation are that taxes be paid in money including tax collections *eo nomine* and also receipts from sales or redemption of tax sale certificates within the initial two-year period allowed for redemptions. The prior statute authorizes the sale of tax sale certificates held by the State for unpaid taxes with interest and charges, at any time during or after the two-year redemption period. Section 992 (775) C. G. L.; Section 10, Chap. 14572, Acts of 1929. When tax sale certificates held by the State are not sold or redeemed during the two-year redemption period, the sale value of such certificates may be greatly depreciated and it may become expedient to authorize the sale or redemption of such certificates at reduced money prices or for

other considerations that may best serve the interests of taxing units having rights in the tax certificates. After the two-year redemption period, permissible and appropriate statutory regulations different from those regulating redemptions during the two-year redemption period, may control the redemption of such tax sale certificates held by the State, in the absence of a showing of invalidity in the particular statutory regulations so adopted.

The classifications predicated upon the substantial differences shown between rights as to tax sale certificates held by the State before the final two-year redemption period has expired and rights in such certificates that are held by the State after the two-year redemption period, have a practical basis legally sufficient to insure equal protection of the laws to all who may be justiciably interested in the disposition of such tax sale certificates.

By taking school and other district bonds in exchange for long delinquent tax sale certificates covering unpaid taxes levied for county, district and school purposes, as to which the period of redemption has expired, a county does not thereby loan its credit to such school or other district. Such exchange is not shown to violate any organic rights of the parties here complaining. It must be assumed that the statute will be constitutionally applied and that the policy and operation of the statute will conserve the rights of all interested tax units and other parties having organic rights in the premises.

It is clear from the provisions of Section 7 that the bonds and matured interest coupons that are receivable in redeeming lands from tax certificates after the initial two-year redemption period has expired, must be bonds and matured interest coupons from bonds of the county or of

a taxing district in the county where the land to be redeemed is located, and must be for taxes for the year 1931 and prior years.

The provisions of Sections 6 and 7 of Chapter 16252, Acts of 1933, are not shown to violate any commands or limitations contained in Articles IX and XII or other provisions of the Constitution as they affect the rights of the parties here. The organic legislative powers and duties regarding taxation for State, county, district and school purposes must be interpreted in connection with the implied power and duty of the Legislature to provide for the disposition of tax sale certificates representing unpaid taxes levied for State, county, district and school purposes, which are of depreciated or doubtful value for revenue purposes, in order that the taxing units may receive some benefit from the depreciated unpaid tax levy assets contained in unredeemed tax sale certificates and from the extension of taxes upon the lands on the tax rolls for current and future collections of taxes thereon. The statute does not inevitably result in a diversion of school or other county or district funds, and it must be assumed that due accounting for collections will be made to taxing units having unpaid tax rights in the tax sale certificates that are redeemed under the provisions of the Act.

Under the statutes of Florida when lands are sold to the State and tax sale certificates are issued to the State for non-payment of ad valorem taxes thereon, such lands are not thereafter assessed for taxes unless the tax sale certificates are sold or redeemed. Section 984 (769) C. G. L. In redeeming or purchasing such tax sale certificates from the State, the State, county and district taxes due and unpaid on the land for subsequent years with interest and charges must in general also be paid. Thus a single tax sale cer-

tificate may under the statute be the basis for collecting subsequent taxes as well as taxes for the year stated in the certificate. In partial redemptions and sales the tax sale certificate is retained by the State with endorsements as to the extent of the sale or redemption made. Upon sale or redemption of lands covered by tax sale certificates, subsequent unpaid taxes are required by the statute to be collected in the sale or redemption, and the lands are then assessed for current and future taxes.

The provision of Section 2 of Chapter 16252, that during the period from June 2, 1933 to July 1, 1938, "the actual *bona fide* owner or owners to the fee title to any real estate upon or against which the State of Florida holds any tax certificates or lien for unpaid taxes, shall be allowed to pay off and discharge, at any time, any one or more of. such lien or liens without regard to the number of years of unpaid taxes existing against such land at the time of such payment, upon payment of the amount due for taxes and costs and charges, together with interest * * *," and should be so interpreted as not to impair uniformity and to conform to the principles established for State taxation.

Since tax sale certificates evidence the taxes due for the year stated in the certificates respectively and also are the basis for collecting unpaid taxes for subsequent years, in the disposition under Chapter 16252, Acts of 1933, of tax sale certificates held by the State for unpaid taxes for the years 1931 and prior years, if the entire amounts due for taxes for each of the years for which taxes are due and unpaid are not paid when any tax sale certificate is to be redeemed, the certificate should be retained by the clerk of the circuit court for the State, and endorsements made thereon as to the year for which taxes are paid stating the amounts paid, and the party so redeeming should be given

appropriate certificates to such partial redemptions and proper record entries and reports of each such transaction should be made. See statutes regulating the partial sale or redemption of tax sale certificates.

It must be assumed that the statute was enacted with due regard for the interests of all concerned and the contrary is not shown. A violation by the statute of organic provisions is not here made manifest. The policy and wisdom of the enactment are not for judicial determination.

In case No. 1 the motion for a peremptory writ of mandamus is denied. In case No. 2 the motion to quash the alternative writ is granted. In case No. 3 the decree appealed from is affirmed.

DAVIS, C. J., TERRELL, and BUFORD, Justices, concur.

ELLIS, J., and BROWN, J., concur specially.

DAVIS, C. J. (concurring).—Chapter 16252, Acts of 1933, relates only to those lands which have become forfeited to the State for delinquent taxes, as provided by Section 1027, C. G. L., 796 R. G. S., which vests the title to such lands in the State after the expiration of the two-year period of redemption, without the issuing of any deed. Under that Section the tax certificate held by the State is "evidence of the title of the State" to the delinquent tax land, although the State as a matter of gratuity, and solely as a matter of gratuity, has provided that the tax payer may redeem his land from the State at any time before the State disposes of the certificate, or forecloses its rights.

It cannot well be denied that, when the proper tax officers have legally placed upon each individual his share of the public burden of taxation, the Legislature of the State has

no right to lift it from him to the prejudice of other tax payers, or to the detriment of the public credit, either in the form of an abatement before, or in the form of a gift after, collection, or by a return to the tax payer unburdened his forfeited property, for this being done, a deficiency results in the public revenues, which must be supplied by the imposition of additional tax assessments and levies upon the nonfavored class, thereby violating the fundamental constitutional requirement of all taxation, which is that it shall bear equally upon all, with special privileges to none. Simpson v. Warren, 106 Fla. 688, 143 Sou. Rep. 602; Ranger Realty Co. v. Miller, 102 Fla. 378, 136 Sou. Rep. 546; St. Lucie Estates v. Ashley, 105 Fla. 534, 141 Sou. Rep. 738; State ex rel Coe v. Fyler, 48 Conn. 145; State v. Armstrong, 17 Utah 166, 53 Pac. Rep. 981.

It is likewise true that delinquent taxes, and the lands of delinquent tax payers forfeited therefor, constitute a State fund, of which the State is trustee for the benefit of its creditors and its nondelinquent tax payers, and that it is no more competent. for the Legislature to unconditionally dissipate or divert this trust fund to the prejudice of the State, its creditors and its other tax payers, than it would be competent for the Legislature in express terms to have exempted the forfeited lands from taxation in the first instance, or to now make an appropriation from funds raised from other tax payers, with which to pay off the taxes accumulated on the forfeited properties of those delinquent (Gibbs v. Green, 54 Miss. 592), in order that such properties might be unburdened and returned to the original owners, freed of the burdens originally required by law to be imposed upon them for the support and protection of the government, and the payment of the public debt.

But it is also equally true, that a State, having a large

amount of forfeited tax lands among its assets, and faced with a condition which would render impossible any fair, general or reasonably acceptable liquidation of the forfeited lands, or the taxes thereon, constituting a trust fund within its control set up to be used for the benefit of the State, its tax payers and its subdivisions and their creditors, may devise a scheme in the form of a statute, designed to bring about an orderly restoration of the forfeited properties to the scheme so devised, or the execution of it in practice, the tax rolls as revenue-producing assets, and so long as is not such as may be condemned as being nothing more than an attempt to dissipate the State's trust assets without consideration, or other good cause warranting the carrying out of the plan adopted, the courts should not hold an Act setting up such a plan unconstitutional *per se*.

While Section 1 of the Futch Bill would appear to grant an *unconditional* five-year moratorium to delinquent tax payers, allowing them without consideration to remain in the enjoyment of their properties which have already been forfeited to the State for non-payment of taxes within the period allowed for redemption, an examination of the subsequent sections of the statute discloses that the extension thus made is not unconditional, but is conditional upon the faithful payment each year for the next five years of what would be the amount of the current assessable taxes on the properties involved when restored to the tax rolls as the Futch Bill requires.

To illustrate: The Futch Bill requires all these properties to be put on the tax rolls in the regular way for 1933. This means that the properties will be assessed on the rolls as if they were still the properties of the delinquent tax payers, and not forfeited to the State for non-payment of taxes. The effect of this plan is to say to the delinquent owners

whose rights have been already forfeited, "the State restores to you your forfeited ownership on condition that the properties be again assessed to you as your own property and dealt with on the tax books as if it never had been before sold for taxes." By placing the properties again on the assessment rolls for the year 1933, payment of the current taxes for that year and subsequent years is made indispensible, because unless the current taxes referred to are paid, the property will again be advertised and sold in the year 1934 in due course for unpaid taxes, and in that event it will either be sold to a private buyer, who would take his certificate to it under the general law (with all the rights that law gives him), or to the State, the certification to which would immediately render the new certificate, as well as other outstanding State certificates, subject to assignment or redemption under the general law as it existed before the Futch Bill was passed. And, at the expiration of two years from the issuance of the new State tax certificate, whether then still held by the State, or assigned or sold in the meantime, the newly issued certificate would become enforceable against the land to the extent of being either foreclosed, or tax deed obtained, or title automatically vested in the State under it, as the case might be.

To illustrate further as to the 1932 taxes which are now being collected: Section 5 of Chapter 16252, *supra,* reads as follows:

"Delinquent taxes on any land included under the provisions of this Act, for the year 1932 and subsequent years, shall be sold in like manner and shall carry the same penalty, interest and charges as are provided by the laws of the State of Florida relating in general to the sale of land for unpaid taxes."

The necessary meaning of this provision is that, if the

delinquent tax payer does not take advantage of the privileges now given him by Section 3 of the Act to pay his 1932 tax separately. (a privilege which the general law does not authorize as to lands certified to the State for unpaid taxes*), then for the year 1932 his land will be again put up and "sold" (not re-advertised for 1932 but simply *sold*) in like manner as lands not designated as State certificate lands. In other words, the effect of Section 5 is to sever the 1932 subsequent-omitted tax from the previously issued State certificate and separately "sell" such 1932 delinquent tax lien to any one who will make a bid and purchase a tax certificate thereon *for the 1932 taxes only*. Should there be no bidders, the land would be again knocked down and sold to the State for 1932 taxes, for which a new State tax certificate for 1932 would be issued that would be subject to assignment, sale or foreclosure in due course, as if Section 1 of the Act did not exist. This is so, because Section 1 of the Futch Bill does not apply to the 1932 State tax certificates at all, while under Section 5 of that Act, lands again 'sold" under the Futch Bill for unpaid 1932 taxes "carry the same penalty, interest and charges as are provided by the laws of the State of Florida relating in general to the sale of land for unpaid taxes," which means that such lands again "sold" pass completely from under the Futch Bill when the period of redemption for the 1932 taxes has expired.

Another result is that if the 1932 taxes are not paid before sale, such privileges as may be claimed under Section 4 of the Act become irrevocably lost by the mere failure to pay the 1932 taxes in full within the time required by law, since Section 4 relates to payment of taxes, not redemption

---

*See Chapter 13880, Acts of 1929. Also Chapter 14572, Acts of 1929.

therefrom as Justice WHITFIELD, in his opinion, has pointed out.

So the practical operation of the Futch Bill in the required course of its administration is simply to provide a plan by which State forfeited lands will be carried without prejudice to their former owners so long as those owners render to the State and its taxing units their due in current taxes on the subject matter.

The rule is universal that the practical operation, not the form of a statute, is the criterion by which to judge its constitutionality, when the validity of the Act is judicially brought in question. St. Louis S. W. R. Co. v. Arkansas *ex rel.* Norwood, 235 U. S. 350, 35 Sup. Ct. 99, 59 L. Ed. 265; Kansas City, Ft. S. & M. R. Co. v. Botkin, 240 U. S. 227, 36 Sup. Ct. 261, 60 L. Ed. 617; Panhandle Oil Co. v. Mississippi *ex rel.* Knox, 277 U. S. 218, 48 Sup. Ct. 415, 72 L. Ed. 857; American Mfg. Co. v. St. Louis, 250 U. S. 251 U. S. 95, 40 Sup. Ct. 93, 64 L. Ed. 157; Bailey v. 459, 39 Sup. Ct. 522, 63 L. Ed. 1084; Wagner v Covington, Drexel Furn. Co., 259 U. S. 20, 42 Sup. Ct. 449, 66 L. Ed. 817; McCray v. United States, 195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 78; Hill v. Wallace, 259 U. S. 44, 42 Sup. Ct. 453, 66 L. Ed. 822.

The provision for redemption of the long past taxes in bonds, is clearly sustainable under an Act like Chapter 16252, *supra,* as merely authorizing the substitution of the bonds for the land as the subject of the long delinquent tax liens. This is a process which the State may resort to as a matter of proper State policy when it realizes that a depreciated mass of forfeited State tax lands, difficult of liquidation, affords an appropriate subject matter for a trade for equally depreciated assets in the form of bonds especially when it is considered that these bonds inevitably

stand as one hundred per cent obligations against the tax-payers of the several taxing units of the State, regardless of what the present or temporary market value of such bonds may be at the time of redemption. The principle upon which such a transfer of the tax liens from the forfeited lands to bonds may be made after the uniform process of taxation against the subject matter has been exhausted, will be found discussed in Van Huffel v. Harklerode, 284 U. S. 225, 53 Sup. Ct. 115.

That bond holders and other creditors are not *per se* prejudiced by the Futch Bill, is demonstrated by the fact that under the law as it existed without the Futch Bill, the forfeited lands covered by the Futch Bill would have afforded no basis for a new tax sale in order to raise money with which to pay creditors. All that such lands benefitted the creditor was that in making up current budgets, probable revenues from redemptions and sale of the state-owned certificates might be included in the estimates. It is not shown in any of these cases that a resale of the forfeited properties involved, for the current taxes which, under the Futch Bill, may be assessed against these same lands, is not an equivalent, if not a better remedy, for raising required revenue from these particular forfeited properties for the payment of debt service.

It should not be lost sight of, that in practical administration of a statute of as broad a scope of operation as that here involved, the ancient legal maxim *"neque leges neque senatus consulta ita scribi possunt at omnis casus qui quandoque in sediriunt comprehendatur; sed sufficit ea quae plaerumque accidunt contineri"* (Neither laws nor acts of a parliament can be so written as to include all actual or possible cases; it is sufficient if they provide for those things which frequently or ordinarily may happen), must fre-

quently be resorted to as a means of arriving at a method of application of the statute to actual *conditions,* in such way that a proper state policy and a constitutional purpose will be served.

I therefore fully concur in the opinion of Mr. Justice WHITFIELD, holding the Act in question valid, and submit, in addition to what he has said, my own views on the subject, simply as a supporting argument for what he has already so well set forth.

WHITFIELD and TERRELL, Justices, concur.

BROWN, J., concurs specially.

ELLIS, J. (concurring).—I agree to the conclusion reached by Mr. Justice WHITFIELD, but for reasons different from many of those expressed in the opinion. Chapter 16252, Acts of 1933, in the view I have of the subject, is unskillfully drawn; terms are used which are contradictory in meaning, or must be considered as a sort of redundancy in an effort to save the Act from invalidity.

The title of the Act is: "An Act to provide for the Settlement of Delinquent Taxes on Real Estate in the State of Florida, and to Further Defer the Enforcement of Liens for such Delinquent Taxes, and for the Assessment of Lands Upon or Against which Taxes are Delinquent, and for the Redemption of Delinquent Tax Certificates with Bonds."

It is clear from the language used in Section 1 that the Legislature either had no conception of the difference between "tax certificates" and "liens for delinquent taxes," or, assuming that it believed the phrases to be identical in meaning, deliberately decided to be superfluous in its use of words.

It is, however, a cardinal principle of statutory construction that words are used for a purpose, that redundancy

was not intended, that a statute is framed in perspicuous, intelligible·terms; not in the turgid, bombastic, declamatory style of political orators. It is presumed that the means employed by the Legislature to express its will are adequate to the purpose and do express that will correctly. Denn v. Reid, 10 Pet. (U. S.) 524; Black on Interpretation of Laws, 35.

The doctrine of statutory construction which requires observance of the letter of the statute to determine the purpose of the law maker has been observed by the courts since the days of Lord Coke. 5 Coke 118 a. In Edrich's case, according to Lord Coke, the judge said: "that they ought not to make any construction against the express letter of the statute; for nothing can so express the meaning of the makers of the Act as their own direct words, for *index animi sermo.'* And it would be dangerous to give scope to make a construction in any case against the express words, when the meaning of the makers doth not appear to the contrary, and when no inconvenience will thereupon follow; and therefore in such cases a *verbis legis non est recedendum.'* "

The Supreme Court of the United States in Sturges v. Crowninshield, 4 Wheat. (U. S.) 122, text 202, 4 L. Ed. 529, said the spirit of an instrument is to be collected chiefly from its words.

In the case of Van Pelt v. Hilliard, 75 Fla. 792, 78 South. Rep. 693, L. R. A. 1918E 639, this Court said that where words used in a statute have no definite meaning, or the connection in which they are used are ambiguous, it is the duty of the courts to give to such words a meaning.

Now a "tax certificate" is one thing and a "lien for delinquent taxes" is altogether another thing, and it was the purpose of the law maker that the statute should apply to

both, although the title confined it to the latter, except in so far as the last sentence of the title rescued the Act from fatal inconsistency. To say, as has been asserted, that the draftsman of the Act regarded the phrases "tax certificate" and "delinquent taxes" as synonymous is to affect toward him a patronizing attitude of superior knowledge, and in such assumed authority brush away words and phrases deliberately used, and must be given effect under well recognized principles of statutory construction by which the courts from the days of Lord Coke have considered themselves bound.

I, therefore, say that the Act recognized a distinction that is perfectly apparent in our system of tax assessments and collections between a so-called "tax certificate" and a "lien for delinquent taxes." A tax certificate is evidence of the sale of lands, as the majority opinion definitely states in its carefully worded allegiance to organic law, the "system of taxation includes the sale of lands for the non-payment of State, county and district taxes and for the issue to the State of tax sale certificates showing the amount due for State, county and district taxes on described land *sold* to the State at *tax sales*." (Italics mine.)

A tax certificate is nothing more nor less than a tax collector's written or printed statement that the land described was sold to satisfy the tax due upon it for a certain year, which amounts to a sum certain, to which is added the cost of the sale. When the land is sold to the State the receipt or certificate is held by the Clerk of the Court, when the land is sold to an individual the receipt is held by him. In each case the amount thereafter which may be required of the land owner by way of redemption from the interest in the land created by the sale is augmented greatly by an exceedingly high rate of interest and costs and ex-

penses, making a different sum to be paid by the owner of the land from that which he owed as taxes and which were delinquent up to the actual sale of his land.

Under the system of tax assessments and collections now obtaining in this State real estate upon which taxes are delinquent are advertised and sold by the tax collector. In case there are no bidders the whole tract is required by law to be "bid off" by the tax collector for the State. The receipts or statements issued by the tax collector when the land is sold for the delinquent taxes are transferable by indorsement. When there are no individual bidders the lands are "sold to the State for taxes." When such lands appear by description on the tax rolls for succeeding years the valuation of them is entered but in the margin is noted the fact that the State holds the tax certificate and if the owner redeems the land from the State he is required to pay the taxes for the succeeding years together with the interest. See Secs. 969, 972, 982, 983, 984 C. G. L. 1927. So much the statement in the majority opinion concedes.

When the land is sold for the taxes assessed against it the relation of the owner of the land to the State in respect of the tax which was assessed against it and which became delinquent and by reason of such delinquency the land was sold is completely changed. He is confronted by a new situation. No obligation rests upon him in respect of the land to pay the taxes for the year for which the taxes became delinquent. Indeed he may not do so. That debt in so far as he was obligated to pay it is satisfied, but he may redeem his land from the State's interest in it acquired by purchase at the tax sale, or from the individual purchaser's interest in it acquired at such sale, by paying a much larger sum within a definite time than the amount of the original tax. To say that such amount, which the owner is required to

pay in order to redeem his land from the interest in it acquired by either the State or an individual by purchase of the land at tax sale, is a debt which he owes by way of taxes and that the original tax lien is extended and enlarged to embrace the larger sum required to redeem the land is merely a misuse of words. There is no authority in reason for such a position.

The draftsman of the Act, Chapter 16,252, Acts 1933, therefore had in mind the distinction between "liens for delinquent taxes" and "tax certificates held by the State."

I am of the opinion that in so far as the attempt is made to apply the provisions of the Act to "liens for delinquent taxes held by the State" the application would be in violation of the constitutional requirements of a "uniform and equal rate of taxation." Art. IX, Sec. I, Const.

The word "taxation" as used in the Constitution embraces both assessment and collection. It would be simply burlesque to say that the assessment should be uniform and equal, but the collection may be variable and unequal. In so far as the Act provides for the withholding by the State of any "liens for delinquent taxes" and extending the period for payment to fifteen years, I think, it is valid. In so far as the terms of the Act apply to "Tax Sale Certificates" held by the State they are valid. Tax certificates held by the State, as well as those held by an individual, constitute a sort of property or interest in the land, and when an individual is the purchaser at the tax sale he acquires a contract the obligation of which may not be interfered with by subsequent legislation. See Hull v. State, 29 Fla. 79, 11 South Rep. 97, 16 L. R. A. 308, 30 Am. St. Rep. 95; Starks v. Sawyer, 56 Fla. 596, 47 South. Rep. 513. He has an interest in the land that may develop into complete fee simple title. Likewise the State when it becomes the

purchaser of the land at tax sale acquires a sort of property evidenced by the tax certificate which it is within the legislative power to sell or dispose of upon such terms and conditions deemed by that body to be wise and for the State's interest. To sell such certificates for bonds of the county or district is simply an administrative exchange under statutory authority of one class of property for another class of property.

There are phrases in the language used to construct the provisions of the Act which are difficult of interpretation, which is required because the terms used are vague and almost meaningless. For example, in Sections 1 and 2 reference is made to the "actual" "bona fide owner of the fee title" and "actual bona fide owner or owners to the fee title." Whether the draftsman meant the owner of the fee simple absolute title, or whether he meant the owner merely of a fee of less dignity than the fee simple absolute, and whether he sought to exclude from the provisions of the Act trustees holding only the legal title, or persons holding the title in bad faith through some unfair or fraudulent scheme or transaction, can not be ascertained from the words used in the Act.

Whether there can be an owner of the "fee simple absolute" title while a "tax certificate" is held by the State, or an individual, is very doubtful, for such sale vests in the purchaser, whether State or individual, an interest in the land adverse to the former owner who thereafter does not own the fee simple title because of the adverse outstanding interest evidenced by the tax certificate.

I agree, however, that so far as the terms of the Act are applicable to "tax certificates," and may be practically worked out, the Act is valid and the conclusion arrived at in the majority opinion is concurred in by me.

Brown, J. (concurring specially).—I concur in the opinions and conclusions reached by Mr. Justice WHITFIELD and Mr. Chief Justice DAVIS, as set forth in the opinions written. by them in this group of cases, and also in the reasoning employed, except in so far as such reasoning on some points is modified by the above opinion by Mr. Justice ELLIS.