JAMES MESSER, SR., v. PAUL V. LANG, as Clerk of the Circuit Court of Leon County

and

JAMES MESSER, SR., v. J. M. LEE, as Comptroller, and W. V. KNOTT, as Treasurer.

176 So. 548.

En Banc.

Opinion Filed October 7, 1937.

Rehearing Denied November 12, 1937.

*William Blount Myers,* for Appellant;

*Cary D. Landis,* Attorney General, and *H. E. Carter, W. P. Allen and John L. Graham,* Assistant Attorneys General, and *John Ward Henderson,* for Appellees;

*Treadwell & Treadwell, Evans, Mershon & Sawyer, McKay, Macfarlane, Jackson & Ramsey, Sheppard & Clements, D. C. Hull, Hull, Landis & Whitehair, Claude Ogilvie, M. H. Moyer, H. H. Wells, B. K. Roberts* and *William K. Whitfield* (of Tallahassee) as *amici curiae.*

TERRELL, J.—Appellant, James Messer, Sr., filed two suits in equity in the Circuit Court of Leon County challenging the constitutional validity of committee substitute for House Bill Number 396, Chapter 18296, Acts of 1937, relating to

the sale of Tax Certificates and "subsequent omitted or levied taxes."

The bill of complaint in both suits is filed on the theory that complainant was a taxpayer of Leon County, Florida, that he has paid his taxes for ten years last past and that to permit redemptions to delinquent taxpayers in the manner provided by Chapter 18296, Acts of 1937, would be arbitrary and an unlawful delegation of power to the clerk of the Circuit Court and would be in derogation of the equal protection clause of the fourteenth amendment including Section 1 of Aritcle IX of the State Constitution.

In the first suit, Paul V. Lang, as Clerk of the Circuit Court was made a party defendant and the bill prayed that he be restrained from selling the tax certificates described in the Bill of Complaint or from selling or disposing of any other tax certificates pursuant to Chapter 18296, including subsequent and omitted taxes.

In the second suit, J. M. Lee, as Comptroller, and W. V. Knott, as State Treasurer, were named parties defendant. As to J. M. Lee, the bill prayed that he be restrained from expending public funds to prepare, print and distribute forms and records for the purpose of effectuating Chapter 18296. As to W. V. Knott, the bill prayed that he be restrained from assigning, transferring, or cancelling any tax certificates pursuant to authority vested in him by Chapter 18296.

Identical questions were raised in both cases. On application for temporary restraining order in each case, the chancellor held Sections 6 and 11 of the Act unconstitutional but upheld it in all other respects. On authority of Section 12, he eliminated Sections 6 and 11 and denied the restraining order. This appeal is from that decree.

We discuss first the ruling of the chancellor on Sections 6 and 11. Section 6 is as follows:

"In the event any tax certificate together with subsequent or omitted taxes are purchased under terms of this Act by any person or persons or corporation, not the owner of the land described in such certificate then at the expiration of two years from the date of such sale of such certificate such purchaser shall have the right to apply for tax deed as now provided by law for land described in such certificate, provided that for two years from date of sale of such certificate the owner of said land, that is, the person who held title to said land on date, said certificate became two years old or any grantee of such person, or their legal representative or anyone holding any lien on such land, shall have the right to redeem such land from any or all such tax certificates so sold by the payment to purchaser thereof the amount bid therefor plus 3% per annum from the date of such certificate together with all costs paid by such purchaser in connection with purchasing said certificate."

Section 11 of the Act is in substantially the same wording as Section 6 except that it applies to the redemption of homesteads and allows the owner ten years from date of sale of the certificate to redeem instead of two years allowed for the redemption of other lands under Section 6.

The chancellor held these two sections unconstitutional because they select and classify delinquent taxpayers "as the beneficiaries of special tax concessions with reference to unpaid current taxes" and because they discourage "competitive bidding by reason of the low rate of interest allowed to buyers other than the owner and by giving the owner the right to redeem where the property is bought by an outside bidder for a period of two years as to all prop-

erty not homestead and for ten years as to homestead property."

It is not charged that within the classification made, there is any distinction made between homestead and non homestead owners. It is quite true that Sections 6 and 11 make liberal concessions to homestead and other real estate owners but both the classification and the concessions have been made in every tax sale statute of which we are aware and we have examined many. As to homesteaders, the concessions are more liberal and are guaranteed by the Constitution. They have been approved by this Court as we shall presently show. The low rate of interest, and in fact, every other element of Sections 6 and 11, treated questions of legislative policy with which we are not concerned.

The primary question with which we are concerned is whether or not in authorizing the sale of tax certificates held by the state which are more than two years old together with subsequent omitted and levied taxes, Chapter 18296 violates the due process and equal protection clause of the fourteenth amendment or Section 1 of Article IX of the State Constitution or both.

Appellants concede that the legislature may authorize the sale of tax certificates held by the State which are more than two years old on such terms as it may deem proper but they contend that it is devoid of power to compromise, adjust, or remit "subsequent omitted and levied taxes" thereon on any terms not available to all taxpayers. They rely on Richey v. Wells, 123 Fla. 284, 166 So. 817; City of Marianna v. Davis, 124 Fla. 145, 169 So. 50, and like cases to support this contention.

In Richey v. Wells, the case primarily relied on by Appellants, we were confronted with an assault on Chapter 17406, Acts of 1935, creating delinquent tax adjustment

boards. in each county of the State, a delinquent tax adjustment board of appeals in the State and authorizing them to compromise and adjust tax sale certificates held by the State for the year 1933 or any previous year including "omitted subsequent taxes."

A majority of the Court held the Act in violation of the equal protection clause of the fourteenth amendment in so far as it applied to "omitted subsequent taxes," on the ground that the power to compromise and adjust was vested solely in the sound discretion of the tax adjustment board, that no standard was set up for administering the Act and that it permitted compromise and adjustment of current or "omitted subsequent taxes" upon delinquent tax certificated lands on terms not available alike to all taxpayers. In other respects, the validity of the Act was approved.

As against the contention of appellants, appellees contend that the cases at bar are ruled by Ridgeway v. Peacock, 100 Fla. 1297, 131 So. 140, wherein the Court was confronted with an assault on the constitutional validity of Chapter 14572, Acts of 1929, Section 42 of which provided for the sale of tax certificates held by the State to the highest bidder for cash. The Act applied to certificates issued upon sales for the non payment of taxes for the year 1927 or previous years, "together with all omitted subsequent taxes upon the land covered thereby."

A certificate describing lands claimed by Ridgeway was sold under the Act and he attempted to restrain its delivery to the purchaser on the ground that the amount bid for it was much less than the face of the certificate including subsequent omitted taxes, that the purchaser had refused to sell it to him (Ridgeway) for less than the face of the certificate including subsequent omitted taxes and

penalties and for various other reasons not essential to relate.

The court below denied the relief prayed for and upheld the sale against all attacks. On appeal to this court, the judgment below was affirmed and we further held that after the period of redemption had expired, the privilege to redeem may be modified by Statute if that privilege is not a part of the certificate holder's contract right.

By its terms, Chapter 18286, Acts of 1937, it provides for the sale at public auction to the highest bidder for cash of all tax sale certificates held by the State that are more than two years old, with "subsequent omitted or levied taxes." The Statute in other words, does not attempt to deal with any tax certificates except those in which the period for redemption has passed and title vested in the State.

In Ridgeway v. Peacock, *supra,* we held that after the period of redemption expires, the State may dispose of tax certificates held by it on any adequate terms prescribed by law without violating the rights of owners or other taxpayers. Such was the effect of Ridgeway v. Reese, 100 Fla. 1304, 131 So. 136; State, *ex rel.* Dowling, v. Butts, 111 Fla. 630, 149 So. 746; Ranger Realty Co. v. Miller, 102 Fla. 378, 136 So. 546.

In every one of the cases last cited, the Court had under review statutes providing for the disposition of tax certificates in which the period of redemption had expired and title had vested in the State. It was shown in every one of them that the certificates had brought less than their face value including subsequent omitted taxes but the sale was approved and the Act upheld. We think these cases are in point with and rule the case at bar.

Some confusion has arisen with reference to the appli-

cation of the phrase "unpaid or omitted taxes" or as otherwise expressed "subsequent omitted or levied taxes." Some apply it as if ambulatory following the certificate to date of redemption or purchase regardless of when that takes place. When used with reference to taxes that cannot be settled or compromised except on terms available to other taxpayers. We think it has reference only to current taxes that accrue during the two years allowed for redemption. "Subsequent omitted or levied taxes" have a new status after the period of redemption expires and title vests in the State. Under Section 1027, Compiled General Laws of 1927, they are not extended on the tax roll and the legislature has repeatedly treated them as having a different status subject to be dealt with as it saw fit. See Sections 984, 997, and other sections of the Complied General Laws of 1927, and particularly Chapter 14572, Acts of 1929, Chapter 15053, Acts of 1931, Chapter 16252, Acts of 1933, and Chapter 17406, Acts of 1935. All of these Acts have been upheld.

As we interpret Richey v. Wells, it is not in point with the case at bar. It concerned the interpretation of Chapter 17406, Acts of 1935, creating delinquent tax adjustment boards in each county and authorizing them to compromise and adjust tax sale certificates held by the State for the year 1933 and previous years, including omitted subsequent taxes. The majority of the Court held the Act had, because of an unlawful delegation of power to the tax adjustment boards and because the right of redemption was limited to the owner and permitted him to redeem subsequent omitted taxes privately at a reduced rate which other taxpayers had been required to pay in full.

In practical operation, there was no difference in the Act involved in Richey v. Wells and that involved in Ridge-

way v. Peacock, except in the latter case, sale was made to the highest bidder for cash while in the former case it was made to the *bona fide* owner at such price as the adjustment board could get. A like difference existed in Ranger Realty Company v. Miller and in State, *ex rel.* Dowling, v. Butts; the difference was in the concession to the *bona fide* owner. Every one of these cases involved subsequent omitted taxes and the period of redemption having expired, they were treated in like manner as the face of the certificate and were permitted to be liquidated on such terms as they would bring.

While the foregoing is ample to dispose of the questions raised in this case, there is still another theory leading to the same conclusion on which it may be disposed of. Chapter 18296 is shown by its preamble and content to be nothing more than another step in what has been a consistent legislative policy beginning with Chapter 14572, Acts of 1929, to purge the tax rolls of delinquent property held by the State for non payment of taxes.

In addition to Chapter 14572, Acts of 1929, involved in Ridgeway v. Peacock, *supra,* the Legislature of 1931 enacted Chapter 15053, extending the period of redemption on homesteads to four years and Chater 15054 authorizing the county commissioners to accept bonds and coupons in the payment of taxes for 1929 and prior years, and Chapter 15055 allowing the redemption of delinquent taxes accruing prior to November 1, of any year without paying taxes for the current year as had previously been the law.

The Legislature of 1933 enacted Chapter 16252 requiring all delinquent tax certificates for 1931 and previous years to be held by the State until the first day of July, 1938, during which time they could be sold to no one but *bona fide* owner and he was permitted to redeem them in bonds

which were at the time of greatly depreciated and speculative value. This was the most liberal inducement yet offered to delinquent taxpayers. The Legislature of 1935 enacted Chapter 17406 creating delinquent tax adjustment boards in each county with power to compromise and adjust delinquent taxes. This was the Act involved in Richey v. Wells heretofore discussed.

The facts leading up to this policy were that during the boom years of 1925 and 1926 the Florida real estate tax roll mounted to over $600,000,000. In 1929, when Chapter 14572 was enacted, the tax roll had decreased materially and more than $87,000,000 of it had been certified to the State for non payment of taxes. Confronted with this situation, the Legislature began its policy of making inducements to redeem, sometimes to the *bona fide* owner and at other times to the highest and best bidder for cash but in either event, as heretofore pointed out, the Acts have been before this Court and have been upheld.

In 1937, when Chapter 18962 was enacted, the tax roll then in hand showed a total real estate assessment of $408,573,992, $97,363,816 of which was certified to the State for non payment of taxes. Appellants contend that the certified land was in chips and whetstones that had not been redeemed under the previous Acts offering redemption concessions and that the 1937 Act was designed primarily to make liberal inducement to the former owners to redeem their lands but if not redeemed by them, to give others a chance on the same terms and thereby restore them to the tax rolls.

An analysis of the rolls from 1926 to 1929 and from 1929 to 1937, cannot be said to conclusively support this contention but whether true or to what extent it may be true, it was a matter purely of legislative policy which we

have approved. In State, *ex rel.* Dowling, v. Butts, *supra,* we held that it was within the power of the Legislature to make reasonable and appropriate concessions to redeem forfeited lands, thereby restoring them to the tax rolls and recovering such value as the certificates would bring. We further held in the last cited case that such Acts were not forbidden by the constitutional provisions requiring a uniform and equal rate of ad valorem taxation upon just valuations of all property on principles established for state taxation.

The features in Chapter 18296, that were not embraced in the other Acts that we have discussed were the low rate of interest allowed for redemption if the certificate was purchased by a stranger, absolute vestiture of title in the state at the end of two years, and the concession extended to homesteaders.

These are all matters of legislative policy with which we are not concerned. The right to redeem at any time is nothing more than a gratuity which may be granted or withheld but if granted, may be restricted in the discretion of the Legislature. As to subsequent omitted taxes, their status and disposition, there was positively no material difference in Chapter 18296, and the chapters that were involved in Ridgeway v. Peacock and in some of the other cases herein alluded to.

The Legislature found as a fact that in the boom year of 1925, real estate values were catapulted to four or five times their former values, that the collapse of the boom was followed by an unprecedented depression which "froze" and depressed the value of real estate, that as a result of the depression, a large percentage of the real estate was certified to the state for non payment of taxes, that in 1937, the value of certified lands was $97,000,000 which was in

most cases fictitious and the lands not worth the face of the certificates, that being certificated to the State they are producing no revenue, the lack of which is embarrassing the counties and municipalities and being so it is to the interest of the state that the certificates be sold at such prices as they will bring and the lands restored to the tax rolls.

Whether or not the Legislature pursued a wise policy, we are not authorized to determine. Some of the briefs point out individual cases in which certificates have been or about to be purchased for a small per cent. of their actual value, but they do not challenge the Legislature's finding that in the main they are fictitious and of speculative value. This court has recognized the depreciated value of unredeemed certificates and the power of the Legislature to make provision for the disposition of them in any way it sees fit. All the courts recognize the impossibility of framing a tax law totally devoid of inequalities.

The means provided may have been short sighted and some other may have been much better. It may be that the Legislature did not accurately sense the number of tax dodgers that were within the pale of the Act. The facts show that something needed to be done and the experiment attempted was within the ambit of legislative power. This is the test of judicial interpretation rather than what the judge would have supported if he had been a member of the Legislature. Questions of economic policy are solely for the Legislature to determine. The fact that the scheme provided is obnoxious to the Court does not galvanize it against assault.

Briefs of numerous counsel were submitted in some of which the questions were differently stated. They attack the draftsmanship of the Act, its effect on other Acts, and the jurisdiction of the federal courts. We have not over-

looked any of them but think such of these questions as are properly raised are comprehended and answered in what we have said here. Our conclusion is that the Act is valid against all assaults made.

It follows that the judgment of the chancellor is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

BROWN, BUFORD and CHAPMAN, J. J., concur.

ELLIS, C. J., dissents.

BROWN, J (concurring with Mr. Justice TERRELL).—Section 1 of Chapter 18296, Acts of 1937, states the reasons which induced the Legislature to pass the Act now under review, and Section 2 provides for the sale of tax certificates held by the State that are more than two years old, and makes it the duty of the clerks of the Circuit Courts to offer such certificates together with "all subsequent omitted or levied taxes" for sale at public outcry to the highest and best bidder for cash, when written request is made by any person for such sale.

The Act is entitled "An Act relating to and concerning taxation, and providing for the sale of tax certificates, together with subsequent omitted or levied taxes; and further providing for vesting of title to land covered by tax certificates in the State of Florida."

In considering the validity of this Act, it must be borne in mind that *the taxes,* for which the lands were originally sold and for which tax certificates were issued, were not all State taxes by any means, but included in addition to the one mill school tax required to be levied annually by the State, and other State taxes, county taxes and school district taxes, and other district taxes, and that the amounts received by the State for the sale of tax sale certificates, as well as for taxes collected when due, are by law distrib-

uted by the State to State, County and district funds in proportion to their interests severally in the taxes so collected. All the statutes considered together operate to make the State a trustee for the governmental funds that are the beneficiaries of the unpaid taxes represented by the tax certificates held by the State, and this trust attaches to the funds accruing from the sale of such certificates.

The two most important questions which have been argued in this case are as follows:

1. May the State sell, not only the tax certificates themselves, but the "subsequent omitted or levied taxes" referred to in the Act, along with the certificates, to the highest bidder for cash as provided in the Act?

2. Do Sections 6, 8 and 11, which were held unconstitutional by the Circuit Judge, extend such a favoritism or advantage to the record owner of tax forfeited lands, by reason of the redemption privileges set out in Sections 6, 8 and 11, as to discourage competitive bidding at sales held under the Act, to such an extent as to amount to an unlawful disposition of tax assets held by the State in trust for the counties and other taxing units whose unpaid taxes are represented by the certificates proposed to be sold?

As an incident to these two questions there might be added a third, and that is: When does the *taxation process,* as to which the uniformity provision of the Constitution attaches, come to an end under the laws of this State, so as to permit the State to sell tax sale certificates or tax-forfeited lands on the best terms obtainable in the judgment of the Legislature; and how far may the courts go in questioning such legislative judgment?

It will be noted that Section 6 of this Act provides that the owner of lands who held title to said land on the date the tax certificate became two years old, or any grantee

of such person, or any one holding any lien on such land, may redeem from the purchaser who bought the tax certificate, at a sale held under the Act, by paying to such purchaser within two years after the sale the amount bid therefor, plus three per cent per annum from *the date of such certificate* (or in case of homestead property, within ten years from date of sale, Section 11) together with all costs paid by such purchaser in connection with purchasing said certificate. And it will be noted further that by this Act the certificates, when sold under the Act, carry with them "all omitted or subsequent levied taxes, including the year for which said sale is made." These are the only provisions of the Act which have given me any concern, so far as the constitutionality of the Act is concerned.

Both our State and Federal constitutions guarantee to all citizens the benefit of due process and equal protection of the laws, and Section 1 of Art. IX of our Florida constitution commands that the Legislature shall provide for "a uniform and equal rate of taxation, and shall prescribe such regulations as shall secure a just valuation of all property," both real and personal.

In his concurring opinion in the case of State, *ex rel.* Dowling, v. Butts, 111 Fla. 630, 149 So. 746, in which the writer concurred, Mr. Justice ELLIS, at present the Chief Justice of this Court, said:

"The word 'taxation' as used in the Constitution embraces both assessment and collection. It would be simply burlesque to say that the assessment should be uniform and equal, but the collection may be variable and unequal."

It is uniformity of burden rather than identity of methods of enforcement which is required by such a constitutional provision. Galusha v. Wendt, 114 Iowa, 597, 87 N. W. 512.

The Act does not provide for any minimum bid at sales held thereunder; nor is any discretion placed in any official or board of officials to reject any bid for inadequacy. It is perfectly possible under the Act that a purchaser at the sale, if no one outbids him, may buy tax certificates representing thousands of dollars worth of taxes for as little as one dollar, plus the payment of advertising costs and clerk's fees, provided for in the Act. A delinquent taxpayer may have the tax certificates on his own property put up for sale to the highest bidder and may buy in the certificates on his own property and secure receipts for all subsequent omitted or levied taxes, including the current year, for any bid that he may choose to make, provided he is not out-bid by another purchaser at the sale. And it would appear that the Act affords very little encouragement to any one to out-bid the owner, for at any time within two years from the date of the sale the owner of the land or any one claiming under him shall have the right to redeem by the payment to the purchaser of the amount bid, plus interest at three per cent. from the date of the certificate, together with costs paid by the purchaser. And if the outside purchaser bids more than the amount of taxes and costs represented by the certificate, the excess is paid over to the owner. Section 7 provides that if the owner purchases such certificates at the sale or redeems them from a purchaser at the sale, then the owner is entitled to the cancellation of such certificates. And Section 8 provides that the owner of lands covered by *tax certificates dealt with under the Futch Act,* may have such certificates together with subsequent omitted or levied taxes, sold under the provisions of this Act. Section 11 of the Act grants like privileges of redemption to the owner of homestead property for a period of *ten years* from *the date of the sale ;*

not from the date of the certificate. The inclusion of the Act of subsequent "levied" taxes was probably done to take care of any levies of taxes on tax-certificated lands which had been made under the "Futch Act."

The effect of these sections of the Act is to grant, after a sale under the Act an *additional new period of redemption,* and on more favorable terms, beyond the initial two-year period of redemption allowed under the old law, which period has of necessity expired in the case of certificates dealt with in the Act. However, under the old law, Section 985, Comp. Gen. Laws, the owner still had the right to redeem from the purchaser at tax sale by paying the amount of the certificate and interest and subsequent omitted taxes at any time before a tax deed issued.

We have held in some of our previous decisions that, during the initial two-year period allowed for redemption, the delinquent owner cannot be allowed to pay either "subsequent omitted" or current taxes on terms more favorable than those allowed to other taxpayers who are not delinquent. I do not think there is any disposition to depart from that rule in this case.

It is argued by counsel for the appellant, with considerable force, that the privilege of redemption allowed by this Act is so favorable to the owner that it will inevitably result in discouraging competitive bidding at a supposedly open public sale, and that the effect in operation will be to allow delinquent taxpayers to cancel both delinquent and current taxes at any figure they may see fit to fix.

It is also argued that taxpayers who are not delinquent must pay their taxes for 1937 and 1938 in full; else their land will be sold for taxes in the usual way; but that under this Act, which by its terms lasts for two years, a delinquent owner, aginst whose lands a tax certificate is held by the

State, and who has failed to pay any taxes for several years, may delay having his land sold under this Act for nearly two years and may thus have a fair chance of paying his 1937 and 1938, and probably his 1939, taxes at a few cents on the dollar, in addition to redeeming the property from the back taxes at a big discount; unless, perchance, some other person may see fit to have such delinquent taxpayer's land put up for sale under the Act at an earlier date. But Section 10 provides that if, at the sale, said tax certificates, together with "subsequent omitted or levied taxes," shall bring more than the face thereof, with interest thereon and costs, then any such balance shall be paid over by the clerk to the owner of the fee title at the date of making the sale, unless there exists a valid lien or liens upon said land, in which event such balance shall be paid over to such lien holder to the extent of such lien or liens.

Thus it is contended that the Act actually makes it possible for delinquent taxpayers whose lands have been bought in by the State to remain delinquent for awhile longer and not take advantage of the privileges afforded by the Act until sufficient time has elapsed to enable the owner to escape the payment in full of current taxes which would meanwhile otherwise accrue in 1937 and 1938 if the lands were sold promptly under the Act and promptly returned to the tax rolls.

The general rule applied by the Courts is that perfect freedom from all influences likely to prevent free competition in public land sales, for taxes or otherwise, shall be in all cases strictly exacted; see in this connection Slater v. Maxwell, 6 Wallace, 268, Text p. 274, *et seq.*, 18 L. Ed. 796.

I agree with Mr. Justice TERRELL that all other questions relating to the constitutionality of this Act, Chapter 18,296, are clearly settled by the decisions of this court in the cases

of Ridgeway v. Peacock, 100 Fla. 1297, 131 So. 140, and State, *ex rel.* Dowling, v. Butts, 111 Fla. 630, 149 So. 746.

It is true that this court·has been confronted with some difficulty in construing the exact effect of Section 1027 C. G. L., which was Section 796 of the Rev. Gen. Stats. of 1920, and which section was derived from Chapter 4322, Acts of 1895, and Chapter 5596, Acts of 1907. Section 1027 C. G. L. reads as follows:

"Section 1027. Land bid off for the State.—Where land is bid off by the tax collector for the State, the tax certificate shall issue by the tax collector to the State, in the name of the Treasurer, and if the land is not redeemed or the certificate sold by the State, the title to the land shall, at the expiration of the time for redemption, vest in the State without the issuing of any deed, as provided for in other cases, and the certificate shall be evidence of the title of the State, and none of the provisions of this law providing for the issuing of a deed shall apply in such cases, and in all cases in which land or real estate has heretofore been sold or purchased by the·State and the certificate has not been sold, or land or real estate not been redeemed, and the time for redemption is past, it shall not be necessary for the State to procure a deed, but the ·title· shall be held to be in the State, and the certificate shall be evidence of the title of the State."

The quoted section must be construed in connection with Section 985, C. G. L., 770 Rev. Gen. Stats., derived from Chapter 4888 of the Acts of 1901, which section provides that any person owning or claiming lands sold for taxes, or his agent or creditor, might redeem the same at any time after such sale before a tax deed is issued therefor by paying to the clerk of the Circuit Court the face of the certificate of sale or such proportion thereof as the part re-

deemed shall bear to the whole, and interest thereon at the rate of 25 per cent per annum for the first year (since reduced to 18 per cent), and 8 per cent per annum thereafter

As far back as the case of Hightower v. Hogan, 69 Fla. 86, 68 So. 669, this court speaking through Mr. Justice WHITFIELD, held that under the above quoted statutory provisions the title vests in the State subject to the special provision as to the privilege of redemption and that the classes of persons designated in the statute may redeem the land sold to the State for taxes or any part or parcel thereof or any interest therein at any time before a tax deed is issued therefor *to a purchaser of the certificate at the sale, or from the State,* and that in all cases the right of redemption exists until a tax deed is issued, either to a purchaser at the sale, or to a purchaser from the State.

Then too, it has been held that effect must be given to Section 894 C. G. L. which provides that "All taxes imposed pursuant to the Constitution and laws of this State shall be a first lien superior to all other liens on any property against which such taxes have been assessed which shall continue in full force and effect until discharged by payment." Thus it would seem to have been the intention of the Legislature that even after the State has acquired the property by buying it in at a tax sale, and has acquired the title by the expiration of the two-year period for redemption, yet *the lien for taxes* remains in effect until the taxes are paid. This creates the anomalous situation, where the State becomes the purchaser at the tax sale, of the State holding the title to the property purchased at the tax sale, after the two-year period has expired, and at the same time holding a lien on its own property. The general rule of law is familiar that when a private individual or

corporation acquires the title to property on which he previously held a lien, the lien is merged in the title.

Our decisions, then, do indicate that the title vested in the State after the two-year redemption period has expired is not an absolutely unconditional and indefeasible title, but a qualified or defeasible title, subject to the Statutory privilege of the former owner to redeem at any time before a tax deed is issued, and if the tax certificate is held by a private purchaser, the owner has also the right under another statute to redeem in case of attempted foreclosure of the tax certificate.

If the State had acquired *absolute* ownership of lands described in tax certificates more than two years old, it would appear that to accomplish the purpose of liquidation, this statute should have provided for the sale of *the lands* instead of the sale of the tax certificates and subsequent omitted taxes; yet this suggestion is somewhat doubtful because the former statute provides that the certificates shall be evidence of the title of the State, and it has been assumed by our statutes that by the sale of the certificates the State is selling all rights acquired by it under such certificates.

Now, as to the right of the State to sell, along with the tax sale certificates, "subsequent omitted taxes." The case of Rosenhouse v. Holly, 100 Fla. 1394, 131 So. 389, dealt with the validity of Section 994, Comp. Gen. Laws, which provides that tax certificates held by the State may be *redeemed* upon payment of the amount of such certificates with prescribed interest from date thereof and "any and all subsequent unpaid or omitted taxes," including current taxes for the year in which redemption or purchase is made, if redeemed after the first day of April. It was contended in that case that to require such payments in order to re-

deem was a violation of the constitutional provisions requiring uniformity and equality in taxation. But this court, speaking unanimously through Mr. Justice STRUM, held that: "The requirement complained of is imposed wholly by way of penalty for delinquency. The penalty is not a part of the tax. * * * It does not affect the valuation of the property nor the rate of taxation. * * * It is wholly a matter of penalty for delinquency." Thus the "subsequent unpaid or omitted taxes" referred to in the statute were held to be, not *taxes,* but *penalties* for delinquency.

Assuredly the Legislature may provide for the remission or cancellation, in whole or in part, of mere penalties.

The last and most authoritative decision of this court on the question involved in this case was rendered in the case of State, *ex rel.* Dowling, v. Butts, *supra,* wherein the constitutionality of Chapter 16252, Acts of 1933, known as the Futch Act, was considered and decided. To substantiate this statement it is only necessary to quote from portions of the able majority opinion of the Court which was written by Mr. Justice WHITFIELD. In that opinion it was said:

"When the two-year period of redemption expires, the tax sale certificates then held by the State, may by the Legislature be regarded as being of depreciated value and not readily productive of revenue by sale of redemption. It is within the province of the Legislature to provide for such use and disposition of the tax sale certificates held by the State after the two-year period of redemption has expired, as will in its judgment best conserve the interests of the taxing units having rights in the unpaid taxes as shown by the assessments of lands upon which the sales are made and the tax sale certificates are issued.

"While the legislative power cannot legally be utilized

·to violate organic rights that may exist in the disposition of tax sale certificates held by the State, nor as a means of simply favoring delinquent taxpayers to the prejudice of others who are not delinquent, yet, the Legislature has power to enact laws making reasonable and appropriate concessions to encourage the redemption of forfeited lands from tax sales, thereby acquiring some value for certificates representing uncollectable or long delinquent taxes, and restoring the lands to the tax roll for current and future assessments, and to regulate the use and disposition of taxable resources and assets for the benefit of interested taxing units. And such legislative power should be considered and given appropriate effect in adjudicating the rights of taxing units and of those who have an interest as owner-taxpayer or as public creditor or otherwise in the making of tax levies and in the disposition of depreciated tax sale certificates which may be nonproductive assets. derived through tax assessments for State, county and district ad valorem taxation.

"The organic requirements that the Legislature shall provide for a uniform and equal rate of ad valorem taxation upon just valuations of all taxable property and that all property shall be taxed upon the principles established for State taxation, do not forbid the enactment and enforcement of statutes designed to facilitate the adjustment and settlement of delinquent taxes through reasonable additional extensions, reductions and privileges, to encourage or to facilitate the redemption of lands covered by tax sale certificates held by the State *after* the initial redemption of two years has expired, such privileges of redemption being extended to owners of the property upon condition that current and future taxes on the same land shall be assessed and duly paid; or to make reasonable disposition for some

appropriate consideration of tax sale certificates held by the State *after* the initial period of redemption has expired, when such certificates may be regarded by the Legislature as being depreciated in their revenue value and may not be redeemed or sold except at a discount, where such statutes are appropriate to conserve the interests of the taxing units that have rights in the unpaid taxes represented by the tax sale certificates, and the statutory provisions accord with the principles established by law for State taxation, and are in furtherance of a proper State policy. Such statutes may not violate the organic requirements of uniform and equal ad valorem taxation or the organic principles expressed in the requirements of due process and of equal protection of the laws. See Cooley on Taxation (4th ed.) Sections 259, 264; Ide v. Finneran, 29 Kan. 569; Lincoln Mortgage & Trust Co. v. Davis, 76 Kan. 639, 92 Pac. Rep. 707; Ridgeway v. Peacock, 100 Fla. 1297, 131 So. 140; Ridgeway v. Reese, 100 Fla. 1304, 131 So. 136; Ranger Realty Co. v. Miller, 102 Fla. 378, 136 So. 546, 61 C. J. 123.

"Successive statutory provisions designed to induce the payment of delinquent taxes have been enacted. See Chapter 14572, Acts of 1929; Chapters 15053-4-5-6, 15791, Acts of 1931. Such inducements having failed to secure settlements of delinquent State, county and district taxes and the situation becoming more acute and burdensome to the taxing units of the State, Chapter 16252, Acts of 1933, was enacted to offer greater inducements to taxpayers to settle delinquent taxes by extending redemption privileges and by authorizing bonds of counties and districts to be received in payment of county and district taxes in redeeming tax sale certificates held by the State representing unpaid State, county and district taxes for the year 1931 and prior years, to meet the financial exigencies of the taxing units.

"It is not made to appear that the statute is not appropriate to serve the revenue needs of the public taxing units or that it is designed to unduly favor particular classes of taxpayers to the unfair detriment of other classes of taxpayers, or that any administration of the statute in an unconstitutional manner is about to be carried out. * * *.

"The tax sale certificates issued upon the sale of the lands to the State for the unpaid taxes for the year 1931 referred to in Section 1 of the Act do not become subject to the provisions of the Act until the expiration of the two-year period of redemption from the date of the tax sale certificate issued in 1932 or thereafter for unpaid taxes assessed for the year 1931. This is so because during the two-year redemption period all tax sale certificates are subject to sale and redemption under the provisions of law which require and provide for uniformity and equality in taxation. Sales and redemptions of tax sale certificates held by the State during the two-year redemption period, constitute an integral part of the established uniform tax collection procedure of the State. After the expiration of the two-year redemption period statutes may make appropriate provisions for disposing of tax sale certificates held by the State, when organic rights are not thereby violated. After the initial two-year redemption period, tax sale certificates held by the State may, by the Legislature, be presumed to be or may be regarded as being of doubtful or depreciated productive value. It may then be within the province of the State to so dispose of such tax sale certificates as to conserve the mutual interests of the taxpayers and of the taxing units having unpaid taxes included in the face amount of the tax certificates. Statutes relating to such disposition may be effective unless shown to be in

their provisions or in their operation, violative of organic provisions. * * *

"When tax sale certificates held by the State are not sold or redeemed during the two-year redemption period, the sale value of such certificates may be greatly depreciated and it may become expedient to authorize the sale or redemption of such certificates at reduced money prices or for other considerations that may best serve the interests of taxing units having rights in the tax certificates. After the two-year redemption period, permissible and appropriate statutory regulations different from those regulating redemptions during the two-year redemption period, may control the redemption of such tax sale certificates held by the State, in the absence of a showing of invalidity in the particular statutory regulations so adopted. * * *

"The organic legislative powers and duties regarding taxation for State, county, district and school purposes must be interpreted in connection with the implied power and duty of the Legislature to provide for the disposition of tax sale certificates representing unpaid taxes levied for State, county, district and school purposes, which are of depreciated or doubtful value for revenue purposes, in order that the taxing units may receive some benefit from the depreciated unpaid tax levy assets contained in unredeemed tax sale certificates and from the extension of taxes upon the lands on the tax rolls for current and future collections of taxes thereon. The statute does not inevitably result in a diversion of school or other county or district funds, and it must be assumed that due accounting for collections will be made to taxing units having unpaid tax rights in the tax sale certificates that are redeemed under the provisions of the Act."

In a concurring opinion in that case Mr. Chief Justice DAVIS among other things, had this to say:

"But it is also equally true, that a State, having a large amount of forfeited tax lands among its assets, and faced with a condition which would render impossible any fair, general or reasonably acceptable liquidation of the forfeited lands, or the taxes thereon; constituting a trust fund within its control set up to be used for the benefit of the State, its taxpayers and its subdivisions and their creditors, may devise a scheme in the form of a statute, designed to bring about an orderly restoration of the forfeited properties to the tax rolls as revenue-producing assets, and so long as the scheme so devised or the execution of it in practice is not such as may be condemned as being nothing more than an attempt to dissipate the State's trust assets without consideration, or other good cause warranting the carrying out of the plan adopted, the courts should not hold an Act setting up such a plan unconstitutional *per se.*"

The writer concurred in the above opinions of Mr. Justice WHITFIELD and Mr. Chief Justice DAVIS in that case except in so far as the reasoning on some points was modified by the special concurring opinion of Mr. Justice ELLIS, now the Chief Justice of this Court, who arrived at the same conclusion with the majority of the Court, but in some respects by a somewhat different route. In that opinion Mr. Chief Justice ELLIS, very clearly and forcibly presented certain reasons for the position taken by him, and in which the writer concurred, which I deem to be quite applicable in the present case, and which strongly support the conclusions reached by Mr. Justice TERRELL in his very able opinion in this case. In view of the importance of this case, I think it worth while to quote the following paragraphs from that opinion.

"Under the system of tax assessments and collections now obtaining in this State real estate upon which taxes are delinquent are advertised and sold by the tax collector. In case there are no bidders the whole tract is required by law to be 'bid off' by the tax collector for the State. The receipts or statements issued by the tax collector when the land is sold for the delinquent taxes are transferable by indorsement. When there are no individual bidders the lands 'are sold to the State for taxes.' When such lands appear by description on the tax rolls for succeeding years the valuation of them is entered but in the margin is noted the fact that the State holds the tax certificate and if the owner redeems the land from the State he is required to pay the taxes for the succeeding years together with the interest. See Secs. 969, 972, 982, 983, 984 C. G. L. 1927. So much the statement in the majority opinion concedes.

"When the land is sold for the taxes assessed against it the relation of the owner of the land to the State in respect of the tax which was assessed against it and which became delinquent and by reason of such delinquency the land was sold is completely changed. He is confronted by a new situation. No obligation rests upon him in respect of the land to pay the taxes for the year for which the taxes became delinquent. Indeed he may not do so. That debt in so far as he was obligated to pay it is satisfied, but he may redeem his land from the State's interest in it acquired by purchase at the tax sale, or from the individual purchaser's interest in it acquired at such sale, by paying a much larger sum within a definite time than the amount of the original tax.

"To say that such amount, which the owner is required to pay in order to redeem his land from the interest in it acquired by either the State or an individual by purchase

of the land at tax sale, is a debt which he owes by way of taxes and that the original tax lien is extended and enlarged to embrace the larger sum required to redeem the land is merely a misuse of words. There is no authority in reason for such a disposition.

"The draftsman of the Act, Chapter 16,252, Acts of 1933, therefore had in mind the distinction between 'liens for delinquent taxes' and 'tax certificates held by the State.'

"I am of the opinion that in so far as the attempt is made to apply the provisions of the Act to 'liens for delinquent taxes held by the State' the application would be in violation of the constitutional requirements of a 'uniform and equal rate of taxation.' Art. IX, Sec. 1, Const.

"The word 'taxation' as used in the Constitution embraces both assessment and collection. It would be simply burlesque to say that the assessment should be uniform and equal, but the collection may be variable and unequal. In so far as the Act provides for the withholding by the State of any liens for delinquent taxes, and extending the period for payment to fifteen years, I think, it is valid. Tax certificates held by the State, as well as those held by an individual, constitute a sort of property or interest in the land and when an individual is the purchaser at the tax sale he acquires a contract the obligation of which may not be interfered with by subsequent legislation. See Hull v. State, 29 Fla. 79, 11 South. Rep. 97, 16 L. R. A. 308, 30 Am. St. Rep. 95; Starks v. Sawyer, 56 Fla. 596, 47 South. Rep. 513. He has an interest in the land that may develop into complete fee simple title. Likewise the State when it becomes the purchaser of the land at tax sale acquires a sort of property evidenced by the tax certificate which it is within the legislative power to sell or dispose of upon such terms and conditions deemed by that body to be wise and for the

State's interest. To sell such certificates for bonds of the county or district is simply an administrative exchange under statutory authority of one class of property for another class of property. * * *

"Whether there can be an owner of the 'fee simple absolute' title when a 'tax certificate' is held by the State, or an individual, is very doubtful, for such sale vests in the purchaser, whether State or individual, an interest in the land adverse to the former owner who thereafter does not own the fee simple title because of the adverse outstanding interest evidenced by the tax certificate.

"I agree, however, that so far as the terms of the Act are applicable to 'tax certificates,' and may be practically worked out, the Act is valid and the conclusion arrived at in the majority opinion is concurred in by me."

It appears therefore from the previous opinions and decisions of this court that the *process of taxation,* as to which the Constitution requires uniformity, came to an end, at least so far as the State was concerned, when the effort to collect taxes failed, and the lands upon which taxes had not been paid were duly advertised and sold under the basic tax statute above referred to, and the delinquent owner failed to redeem within the two-year period allowed for redemption. If there were no bidders at the sale and the State therefore had to become and did become the purchaser, and the owner allowed the two years to expire without redemption, then and there the title vested in the State without the execution of a deed and the tax certificate issued at the sale became evidence of the State's title. Thus, the process of assessing and collecting taxes on the lands here involved, in so far as it was possible to collect them, had come to an end, the property taxed had been, in effect, confiscated, and taken by the State in the exercise

of the tremendous but absolutely necessary power of taxation. And, as stated in the above quoted opinion of Mr. Justice WHITFIELD, when the State has become the purchaser at the tax sale and the period for redemption had expired *the tax certificates* became the property of the State, which it may dispose of in such manner as the Legislature may prescribe when no organic rights are thereby violated; and as stated by Mr. Justice ELLIS in his concurring opinion, when this point is reached, "the relation of the owner of the land to the State in respect of the tax which was assessed against him, and which became delinquent and by reason of which delinquency the land was sold, is completely changed," and "when the State becomes the purchaser of the land at a tax sale it acquires a sort of property evidenced by the tax certificate which it is within the legislative power to sell or dispose of upon such terms and conditions deemed by that body to be wise and for the State's interest."

I find no provisions in our Constitution expressly prescribing or limiting the terms or conditions upon which the Legislature shall sell or dispose of tax certificates held by the State, or tax certificated lands.

There are some provisions in the Constitution with reference to the disposition of the "public lands" of the State, but we have held that tax-forfeited or tax-certificated lands are not public lands within the meaning of such constitutional provisions. See Section 5 of Art. XVI; Section 4 of Art. XII, Art. IV, Sections 14 and 26.

It thus appears that the first question propounded in the earlier portion of this opinion must be answered in the affirmative. Our previous decisions make it perfectly clear that the Legislature may provide for the sale of tax certificates, together with the subsequent omitted or levied taxes

referred to in the Act; for the State cannot effectively levy taxes on its own lands, and "subsequent omitted taxes" are mere penalties.

The second question is the one that has given me most concern. That question dealt with the very liberal privileges of redemption from sales held under this Act, accorded to the owner of tax certificated lands who held title to said lands on the date the tax certificate became two years old, or any one claiming under him. Such owner, or person claiming under him, may under the Act, as we have seen, redeem within two years after a sale under the Act by paying the purchaser at the sale the amount bid therefor, plus three per cent per annum from the *date of* such certificate, and in case of homestead property, he may do so within ten years from *date of sale*. (It might be noted that as to non-homestead property, the owner must in all cases pay at least six per cent, and in case of old certificates a much larger percentage, as the three per cent. runs from the date of the certificate. To redeem a seven-year-old certificate, the owner would have to pay 21 per cent.)

After diligent consideration of our previous opinions, I am forced to the same conclusion reached by Mr. Justice TERRELL in his opinion herein; that is, that the indulgence or privilege of redemption thus accorded was a matter of legislative judgment and discretion and "within the ambit of legislative power."

Nor does it clearly appear that these provisions of the Act constitute such a "dissipation" of tax certificates, held by the State partly in trust for the counties and other taxing units, as would authorize this court to strike the Act down. The courts must always be careful not to usurp the legislative power. It is axiomatic that the courts are not concerned with the wisdom or policy, or even the fair-

ness or justice, of legislative acts unless they plainly and beyond all reasonable doubt violate some one or more of the provisions of our State or national constitutions.

Mr. Justice DAVIS, in the case of State, *ex rel.* Dowling, v. Butts, *supra,* in which a majority of the court concurred, said that it was within the legislative power to "devise a scheme in the form of a statute, designed to bring about an orderly restoration of forfeited property to the tax rolls as revenue-producing assets, and so long as the scheme so devised or the execution of it in practice is not such as may be condemned as being nothing more than an attempt to dissipate the State's trust assets without consideration, * * * the courts should not hold an Act setting up such a plan unconstitutional *per se.*" Surely we cannot go so far as to hold that in adopting this statute the Legislature was deliberately attempting to dissipate the State's trust assets without consideration. The statement of facts and reason for their adoption of the Act as set out in Section 1 thereof is alone sufficient to refute any such charge.

For these reasons I concur with Mr. Justice TERRELL that the Act must be held constitutional as against all attacks here made upon it and that therefore the judgment of the court below should be reversed.

ELLIS, C. J. (dissenting).—I am unable to agree either with the conclusion reached by the majority, or the process of reasoning by which that conclusion is reached, nor am I able to agree with the conclusions reached by Mr. Justice BROWN, in his concurring opinion, that the Act under consideration, Chapter 18296, Laws of 1937, "must be held constitutional as against all attacks here made upon it."

I find in Section 1 of the Act an anomalous attempt to enact into law the statement of facts set forth in that section as a basis for the provisions which follow in other sections.

That section is an apparent attempt to declare by legislation, certain facts of which the court may take judicial knowledge as a basis for the legislative policy set forth in the remaining sections of the Act. The facts set forth in that section may have no more bearing upon the construction of the provisions of the Act than if they had been set forth in a preamble. It is obvious that no legislative enactment can determine a state of facts contrary to what the Court may, in the exercise of its power, know by taking judicial knowledge of them. See 23 C. J. p. 58.

There is no statement of fact contained in the first section of the Act of which the Court may not take judicial notice, except possibly those facts alleged in the last two paragraphs or "whereas," viz.: that it is impossible for the State and County government to properly function with the enormous amount of property off the tax roll, and that it would be to the best interests of the State "to sell these tax certificates that are more than two years old and subsequent omitted or levied taxes." Those two statements, in the form of statements of fact, can, in the last analysis, be no more than an opinion by the Legislature of the possibilities of the Executive Department to function in the circumstances recited in the remainder of the section. Whatever of value that legislative opinion may be, it at least furnishes a legislative reason for the enactment of the statute.

The remaining provisions of the Act then set up a method by which the Legislature considers that the government of the State may be rescued from inadequate functioning or collapse. Therefore the Act in its subsequent provisions discloses a policy which it is intended shall be observed by the executive department in rehabilitating the impaired and broken ad valorem .tax system which has come upon the

State, possibly by reason of the economic depression, which may have begun many years ago, according to the theories of most publicists and public economists, and found its first palpable expression in the year 1929 and subsequent years.

With the wisdom and legislative policy of an Act the courts have no concern. In the majority opinion I find that doctrine to be recognized in the following words: "These are all matters of legislative policy with which we (the Court) are not concerned." Yet, in another portion of the opinion, referring to certain Acts of the Legislature, the statement is made: "it was a matter purely of legislative policy which we (the Court) have approved."

It is difficult for me to perceive how the Court, which has no concern with the legislative policy motivating an Act, may authoritatively approve or disapprove of it. Therefore, I am concerned only with the question whether the provisions of Chapter 18296, *supra,* contained in Section 2 and subsequent sections, are within the power of the Legislature to enact, in view of constitutional limitations on the subject of taxation and finance as the same is limited by the provisions of Art. IX, and other provisions, of the Constitution of 1885.

The provisions of Sections 984 to 997 C. G. L. 1927, merely secure to the owner of land, which has been sold for taxes, the privilege of redeeming the land from the claim of the State or an individual who may have purchased the land at tax sale as evidenced by the tax collector's statements or receipts made by him at the tax sale, otherwise known as tax certificates.

The conditions upon which such redemptions may be made may be as light or as heavy as the Legislature may, in its wisdom, prescribe; therefore, in the view I have of the question presented in this case, those sections of C. G. L.

have no bearing. The matter of requiring the former owner of land, who desires to redeem it from the State, in which at the expiration of two years from the date of the certificate the title has vested, to pay in addition to the face of the certificate a sum which would be approximately equivalent to taxes that may have been levied and collected upon such land had it not been sold for taxes and become the property of the State after two years, is merely a condition imposed upon the owner for the redemption of his land from such certificate.

The imposition of such conditions upon the owner for the redemption of his land is entirely within the purview of legislative wisdom or policy through which it requires the Executive Department to dispose of property acquired by the State by tax sales and to obtain the replacement of such lands upon the tax roll, that they may bear their proportion of governmental expense. I hold that with that wisdom or policy of the legislative enactments the courts have no power justly to criticize or to approve or disapprove.

In the case of Washbish v. Elvins, 114 Fla. 575, 154 South. Rep. 315, this Court held that the owner of land, which had been sold to the State for the tax levied upon it, had no equity upon which to base an injunction to restrain the clerk of the court from issuing a deed upon a tax certificate issued to the State for the non payment of taxes on the ground that he had sold such certificate for a less sum than was required by the provisions of Section 992 C. G. L., *supra.* The view expressed by this Court in that opinion, in the last analysis, is that the sale of a tax certificate held by the State is not a matter of taxation, because it held that the owner of land could not complain that the certificate was sold by the clerk for less than the amount required by the statute.

In the case of Ridgeway v. Peacock, 100 Fla. 1297, 131 South. Rep. 140, this Court, construing Section 42 of Chapter 14572, Acts of 1929, held that the sale of a tax certificate held by the State was a matter in proper relation "to and concerning taxation." The title of the Act is: "AN ACT Relating to and Concerning Taxation," and amending certain other acts of the Legislature and providing for the foreclosure in equity for tax sales certificates and deeds, and for the procedure in such cases. Thus, by an error of the Legislature, perpetuated by this Court, the sale of a tax certificate held by the State is a matter of taxation, or properly related thereto, which, if true, the owner of the land covered by a tax sale certificate would have such an interest in the land covered by such certificate as to give him a standing in equity to prevent him being deprived of it in violation of the terms of the statute which requires the payment of the face of the certificate by a person who desires to purchase it.

In the case of Richey v. Wells, 123 Fla. 284, 166 South. Rep. 817, the Court had under consideration the terms of Chapter 17406, Acts of 1935, which undertook to create a Delinquent Tax Adjustment Board in each county and a Delinquent Tax Adjustment Board of Appeals. The Court, by a majority opinion, held that the Act in undertaking to set up a system for the administration of the tax redemption laws permitted inequalities in its application to payers generally, and that the powers attempted to be vested in the County Delinquent Tax Adjustment Board to compromise and adjust "omitted subsequent taxes" was an unlawful delegation of legislative power, and that it was also fatally defective in the matter of certainty of its application.

The Court also held that omitted taxes were current taxes which could not be compromised by terms not avail-

able to all. The term "current taxes" was not defined and it seems to be impossible to gather from the words of the opinion the meaning of the term, whether it means taxes for the current years, that is the year in which the redemption occurs, or the years preceding the year back to the date of the sale of the land for the tax of the preceding year.

The principle on which the decision seems to rest is that the sale of tax certificates is not a matter in relation to taxation, but that the effort of the Legislature to remit taxes for the current year during which the redemption of the land occurred and subsequent years is a matter in relation to taxation, and provisions of the law as to such taxes must be equal and uniform and available to all taxpayers. I think it proper here to quote the language of Mr. Justice DAVIS, who wrote the opinion in the above entitled case, as follows:

" 'Omitted subsequent taxes' are current taxes and as such they may not be constitutionally compromised, adjusted or remitted on any terms not likewise made available to all taxpayers alike—that is to say, those who have already paid their current taxes due on lands not tax delinquent, nor certified to the state, nor held by the state subject to redemption at the option of the owner under circumstances permitting the owner and no one else to demand redemption as a matter of right on condition that he pay therefor such 'omitted subsequent taxes' as other taxpayers have already been compelled to pay for the same taxpaying period, or which they remain liable to being compelled to pay because no 'compromise or adjustment' privileges are open to them under the terms of any prevailing statute.

"If the foregoing is not so, then the constitutional requirement of the equal protection of the tax laws is a mean-

ingless jargon of words, because under the state's tax law as here proposed to be administered, a delinquent taxpayer can compromise a 'current unpaid tax merely because it is called in legal name an 'omitted subsequent tax,' whereas one who is not so delinquent or who has paid the tax is denied an equivalent privilege. The refunding or remission of an 'omitted subsequent tax' in one county alone, or to one class of citizens only, such as to those who have resided in Florida for five·years or more, would be no less objectionable from the standpoint of unequal protection of the tax laws, than what has just been pointed out can be done under Chapter 17406 with reference to 'omitted subsequent taxes.'" Richey v. Wells, *supra,* text: 123 Fla. 288.

The Constitution of this ·State, Art. IX, Sec. 1, requires the Legislature to provide for "a uniform and equal rate of taxation." The term "rate" does not mean millage, and is not confined to the process of assessment but applies equally to the other necessary process of collection, so that the phrase "rate of taxation" applies both to assessment and collection, thus securing to the people of the State the guarantee of equal and uniform methods in the process of taxation.

· The term taxation defines the power by which the sovereign raises revenue to defray the necessary expenses of government and it embraces two phases: the processes of assessment and the processes of collection. The two processes constitute the taxation system, which is required to secure uniformity and equality. "The word 'taxation' as .used in the Constitution embraces both assessment and collection. It would be simply burlesque to say that the assessment should be uniform and equal, but the collection may be variable and unequal." State, *ex rel.* Dowling, v. Butts,

111 Fla. 630, text 665, 149 South Rep. 746; 26 R. C. L. p. 14; Gautier v. Ditmar, 204 N. Y. 20, 97 N. E. Rep. 464, Ann. Cas. 1913 C, text 962; Curtiss v. Sheffield, 213 Mass. 239, 100 N. E. Rep. 365, 50 L. R. A. (N. S.) 402, text 405.

I, therefore, am of the opinion that so much of the decree as held Sections 6 and 11. of Chapter 18296, *supra,* to be invalid should be affirmed, and that the remainder of the decree should be reversed.