## TRUSTEES OF THE INTERNAL IMPROVEMENT FUND OF STATE OF FLORIDA v. BEACH et al.

### No. 10807.

Circuit Court of Appeals, Fifth Circuit.

April 20, 1944.

J. Tom Watson, Fred M. Burns, and James H. Millican, Jr., all of Tallahassee, Fla., for appellants.

M. D. Carmichael and Manley P. Caldwell, both of West Palm Beach, Fla., for appellees.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The amount of compensation awarded for the lands involved in this suit, which were taken by the United States in condemnation proceedings, is the subject matter of this case. The Trustees of the Internal Improvement Fund of the State of Florida (an agency of the State) claimed title to said lands pursuant to Sec. 65 of Chapter 14717, Laws of Florida, Acts of 1931, F.S.A. c. 298 Appendix § 1530(66) by which the lands were forfeited to appellants for nonpayment of drainage district taxes.

The appellees also claimed title and the proceeds from the award, less lawful taxes, and asserted that the Trustees of the Internal Improvement Fund have only a tax lien or tax sale certificates from which appellees have a right of redemption. The tax sales were made prior to 1931, during the period when all lands on which the drainage taxes were not paid were automatically sold or stricken off to the Trustees of the Internal Improvement Fund. The law also then provided that after a period of two years the fee simple title to such delinquent lands as were unredeemed would vest in the Trustees and from thenceforth the Trustees were required to, and did, pay the annual drainage taxes on lands which they had thus acquired. The Trustees seem, however, to have pursued the practice of allowing redemptions of such lands by the owner upon the payment of the taxes, charges, etc.

Prior to 1931 the Everglades Drainage District was managed and operated by the Trustees of the Internal Improvement Fund, a State agency. But in 1931 the Board of Commissioners of Everglades Drainage District was created by the Legislature and given the supervision and management of the District. The Trustees of the Internal Improvement Fund were State officers—members of the Cabinet—who will be referred to as the "Trustees". The Commissioners of the Everglades Drainage District (who will be hereinafter referred to as "Commissioners") were local citizens living within the District.

Chapter 14717, Acts of 1931, which was the Act taking the management and supervision from the Trustees and placing same with the Commissioners, provided, by Sec. 65, that all tax sale certificates in the hands of the Trustees, whether evidencing a lien upon, or title to, lands within the Drain-

age District, which had theretofore issued to the Trustees in pursuance of the sale of lands for nonpayment of taxes levied by the Drainage District, were held in trust by the Trustees for the Commissioners, and that the beneficial interest and title to said tax certificates was vested in the Commissioners, subject to the right of the Trustees to be repaid by the Drainage District any sums of money which the Trustees had advanced for the account of the Drainage District. The Act further authorized a settlement between the Trustees and the Commissioners by the relinquishment by the Commissioners of all their rights in certain tax certificates (hereinafter called "certificates" as distinguished from Certificates of Indebtedness) agreed upon between the Commissioners and the Trustees, and the issuance of certificates of indebtedness from the Commissioners to the Trustees for any balance remaining due to the Trustees after the Trustees had selected the tax certificates which they desired. The Act also provided that the certificates relinquished by the Commissioners could be redeemed within two years from the date of issuance of the certificate or within six months from the date of the settlement, whichever should be longer, by the owner paying the amount required to redeem such certificates under the provisions of the law in force at the time the certificates were issued. It was also provided by said section that upon the expiration of the time for redemption of the certificates selected and retained by the Trustees "no further right to redeem shall exist, and the said Trustees shall be deemed to have a fee simple title to all lands covered by unredeemed certificates in their hands, and such lands shall constitute a part of the Internal Improvement Fund of the State of Florida, and shall be held and disposed of by such Trustees in like manner as is provided by law in respect to other lands constituting a part of such Internal Improvement Fund."

By the above process the Trustees of the Internal Improvement Fund acquired the legal title to the lands involved in this suit, of which the period of redemption had expired long before proceedings in this cause were initiated.

Appellees assert that the Trustees merely have tax sale certificates or tax liens and that notwithstanding the provisions in Sec. 65 of Chapter 14717, Acts of 1931, vesting the fee simple title in the Trustees after the expiration of the period of redemption, nevertheless they, the original owners, may still redeem; that the fee simple title vested by the statute is in the nature of a lien for security, and that said chapter did not constitutionally divest appellees of their title to the land in question.

■ We are aware of no provision in the organic law that prohibits the Legislature from vesting title in the State at the expiration of a reasonable period within which to redeem lands from sale for delinquent taxes, particularly where the State or the arm of the State to which said land title was struck off has been required to pay and has paid the annual taxes accruing against the said lands from that date henceforth, as is the case here.

The well-known Murphy Act of Florida (Chapter 18296, Laws of Florida, Acts of 1937), which was held constitutional, had a provision vesting title in the State upon failure of the landowner to redeem within a fixed period. See Messer v. Lang, 129 Fla. 546, 176 So. 548, 552, 113 A.L.R. 1073, wherein it was said: "The right to redeem at any time is nothing more than a gratuity which may be granted or withheld but, if granted, may be restricted in the discretion of the Legislature."

The tax was admittedly due, and the fact that steps were taken by the Legislature which authorized the statutory foreclosure of certain tax liens does not render the transaction invalid because all tax liens were not foreclosed by the same method.

But the appellees contend, however, that even if the settlement between the Trustees and the Board of Commissioners under the 1931 Act was constitutional, nevertheless, the Trustees have only a lien to secure the payment of taxes paid by it, instead of a fee simple title. They assert that Chapter 20658, Laws of Florida, Acts of 1941, expressly recognized their right of redemption at rates, specified in said chapter, far below rates of redemption claimed by the Trustees to be in effect, and at a sum much less than the amount put into the lands by the Trustees.

The Court below held that the Trustees had only tax liens or tax certificates, and that they were still subject to redemption; that such tax liens or tax certificates had not been foreclosed either by Court procedure or by statute; and that the lands were now redeemable under the rates set

out in Chapter 20658, Laws of Florida, Acts of 1941.

We fail to find any authority for the redemption of the lands in question, notwithstanding the fact that it appears that the Trustees offered to allow appellees to redeem, but insisted that the schedule for the redemption of lands at tax sales set out in the 1941 Act were not applicable.

Apparently the only decisions construing the 1931 and 1941 Acts in relation to each other are one by Judge Joseph H. White, a Judge of the Fifteenth Judicial Circuit of Florida, and the opinion of the District Judge in the Court below, who arrived at directly opposite conclusions from those of Judge White.

Chapter 20658, Acts of 1941, begins with a long preamble, reciting the impoverished condition of Everglades Drainage District, and asserts that it is essential that the indebtedness of the District should be refunded upon a reduced and compromised basis through the instrumentality of a Court of bankruptcy, and that it is necessary and expedient "that the district dispose of *its existing tax assets* in the manner hereinafter set forth". § 15, F.S.A. c. 298 Appendix § 1530(113) (Emphasis supplied.) The Act seems to have been designed solely as a means of aiding the District to adjust its debts, through the instrumentality of bankruptcy, rather than as an Act for the relief of taxpayers, for one cannot escape the force of the statement in the Act that the Legislature was undertaking to provide a method to dispose of the *tax assets of the District,* as distinguished from tax assets of the Trustees. The Court judicially knows that bankruptcy proceedings were inaugurated, and that a plan of composition was proposed which contemplated the use of monies raised from the sale of tax assets of the District toward effecting the composition with its creditors. Thus it appears that the Act was one for the relief of the District rather than the relief of the taxpayers and that by the Act the District was seeking to secure cash from *its assets* to use in the plan of composition with its creditors. In furtherance of said purpose, the Act provided that it should be the duty of the Clerk of the Circuit Courts of counties lying wholly or partly within the Drainage District to sell to any person applying "the tax sale certificate or tax sale lien for taxes of Everglades Drainage District upon any parcel of land which has been sold for delinquent taxes for the year 1936 or prior years, whether struck off to the Trustees of the Internal Improvement Fund of the State of Florida or Board of Commissioners of Everglades Drainage District, * * * upon the payment of an amount computed on the following basis, * * *." § 15. At first glance it would appear that the foregoing language contemplates the redemption of the lands held by the Trustees of the Internal Improvement Fund, but it will be remembered that there were many sales stricken off to the Trustees of the Internal Improvement Fund prior to 1931, the certificate for which the Trustees had not retained, and which, under the settlement of 1931, were relinquished by the Trustees to the Commissioners, and which in 1941 were assets of the District. Furthermore, under the statute of 1931, all of the certificates which the Trustees held and which had not been redeemed within the period provided by said Act had ripened into a fee simple title. They were no longer mere tax sale certificates or tax sale liens because they had merged into *fee simple titles* under the statute. The lands in question here were not held by the Trustees under tax certificates or tax sale liens, but under the statute which had vested the fee simple title in them. The provision of the 1941 statute last quoted, therefore, has reference to tax sale certificates or liens which the Trustees did not select and retain, but which were assets of the Drainage District that had passed to it under the 1931 settlement.

Paragraphs (d) and (f) of the 1941 Act provide for a report of the sale of tax certificates to be made by the Clerk in each County to the Board of Commissioners of Everglades Drainage District, but they do not provide for any report to be made to the Trustees which justifies the inference that it was not intended that the Clerk would sell any assets of the Trustees.

We digress a moment to call attention to the provisions of paragraphs (g) and (i) of Sec. 15, Chapter 20658, Acts of 1941, which provide that where tax sale certificates are sold to persons not the owner of the land the owner shall have two years in which to redeem, and at the end of two years "the fee simple title to all lands against which there remains outstanding any such tax sale certificates, or tax liens, shall become absolutely vested in the Board of Commissioners of Everglades Drainage

District and every right, title or interest of every nature or kind whatsoever of the former owner of said property, or any one claiming by, through or under him, or any one holding any lien thereon shall cease, terminate and be at an end, and the Board of Commissioners of Everglades Drainage District shall be authorized and empowered to sell the said lands as provided by law." If the contentions of appellees are correct, then at the end of two years the Board of Commissioners would take and own all of the lands of the Trustees, for it does not provide that at the end of two years all tax certificates held by the Trustees of the Internal Improvement Fund shall ripen into title in the Trustees, but that all the unredeemed tax sale certificates shall ripen into title in the Commissioners of the District. These provisions strongly indicate that the Legislature did not intend to include within the Act lands which the Trustees of the Internal Improvement Fund owned in fee simple, but that it was merely dealing with the tax certificates or tax liens which were assets of the Board of Commissioners of the Drainage District.

The title to the Act is lengthy, but there are provisions in the title which are illuminating, for instance: "Providing That Lands Held by the Trustees of Internal Improvement Fund Shall be Subject to All Taxes or Assessments Levied or Authorized to be Levied by This Act;"

The quotation does not refer to tax certificates owned by Trustees but refers to "*Lands* Held by the Trustees." (Emphasis supplied.)

There is also the following statement in the title: "Providing For the Cancellation of Taxes Heretofore Levied and Assessed on Lands *Owned by the Trustees* of Internal Improvement Fund Upon the Cancellation of Certain Indebtedness of the District Owing to Said Trustees;" (Emphasis supplied.)

It will be remembered that the Trustees of the Internal Improvement Fund were required to pay taxes just as any other landowner on these lands which they owned, but in recent years they had not been able to keep all taxes paid up. It will also be recalled that in the settlement of 1931 the Board of Commissioners of the Drainage District executed to the Trustees of the Internal Improvement Fund certificates of indebtedness for the balance due the Trustees in excess of the amount of tax certificates retained.

█ Thus the title to the Act contains no intimation of the change in the right to redeem or a change in the consideration for redemption or for the divesting of title as to lands owned by the Trustees, and if a contrary construction were required, the Act would be in violation of Sec. 16 of Art. III of the Constitution of Florida, requiring the subject of an Act to be briefly stated in the title. This Court should not strike down the Act as unconstitutional by a construction which the contents of the Act neither justify nor require, since the context of the Act clearly shows that its provisions were not applicable to lands which the Trustees of the Internal Improvement Fund owned in fee simple under the settlement made pursuant to the 1931 Act; for instance, the 1941 Act provides, in Sec. 17, F.S.A. c. 298 Appendix § 1530(115), that all taxes and assessments with respect to lands "*now owned in fee simple* by the Trustees of the Internal Improvement Fund of the State of Florida shall become cancelled and annulled upon the release, cancellation and surrender by such Trustees to the Board of Commissioners of all claims and demands, including Certificates of Indebtedness issued by said District pursuant to the provisions of said Chapter 14717, held by said Trustees against the District." (Emphasis supplied.)

We agree with the construction of the Act placed thereon by Circuit Judge Joseph H. White and disagree with the conclusions of the Court below. The tax certificates had ripened into a fee simple title in the Trustees, and appellees had no right of redemption whatsoever at the time of the commencement of the proceedings herein.

The judgment below is reversed with directions to enter judgment in favor of the Appellants.

Reversed with directions.